[No. B153165. Second Dist., Div. Four. Mar. 21, 2003.]

NICHOLAS O'HARE, Plaintiff and Respondent, v.
MUNICIPAL RESOURCE CONSULTANTS et al., Defendants and
Appellants.

## COUNSEL

Proskauer Rose, Harold M. Brody and Christine de Bretteville for Defendants and Appellants.

Law Offices of Joseph M. Lovretovich and Joseph M. Lovretovich for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.) P. J.—**

### INTRODUCTION

This appeal involves interpretation of an arbitration provision contained in an employment contract between appellant Municipal Resource Consultants (MRC) and respondent Nicholas O'Hare (O'Hare). After MRC fired O'Hare, O'Hare filed a lawsuit. MRC moved to compel arbitration. The trial court refused to enforce the arbitration provision, finding it did not meet the criteria established by case law. MRC appeals. We find the arbitration provision is both substantively and procedurally unconscionable and therefore affirm the trial court's decision.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

MRC provides financial consulting services to municipalities. In February 1991, MRC hired O'Hare pursuant to a written contract. O'Hare's responsibilities included designing and providing revenue enhancement audits for

---

[1]Given our analysis, we do not reach O'Hare's alternate analysis that MRC waived the right to arbitration by engaging in some discovery.

MRC's municipal clients. The purpose of these audits is to increase the amount of tax revenues the municipalities receive.

Two provisions of the 1991 employment contract govern our analysis on this appeal.

Section 11, entitled "MRC's Remedies for Breach," provides: "You acknowledge and agree (a) because your employment duties will provide you access to and/or possession of trade secrets and other confidential and proprietary information, and (b) because of your intimate knowledge of MRC and your particular experience, that your services to MRC are of a special, unique, unusual and extraordinary nature and, therefore, any activities or employment on your part which would constitute a breach of any of Sections 7, 8, 9 or 10 above[2], will cause irreparable harm to MRC and money damages would be inadequate to compensate MRC completely for its loss resulting from such breach. *You therefore agree that MRC, in addition to all other rights, shall have the right to file a lawsuit, in any court of competent jurisdiction, to enjoin you from engaging in such activities and to seek any other equitable relief that may be appropriate.*" (Italics added.)

Section 12, entitled, "Arbitration," provides: "*Any claim that you may have arising out of or relating to this Agreement, or the breach thereof, or your employment by MRC, or the termination of your employment by MRC, shall be settled by binding arbitration* in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. *There shall be no pre-arbitration discovery. Neither MRC's right to file a lawsuit seeking an injunction nor MRC's right to injunctive relief is subject to arbitration or to the provisions of this Section 12.*" (Italics added.)

In April 1999, MRC fired O'Hare who was then more than 50 years old.

In May 2000, O'Hare filed suit against MRC and related corporate and individual defendants. The complaint includes, inter alia, causes of action for wrongful discharge and age discrimination under the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.) O'Hare served the complaint in April and May of 2001.

In May 2001, MRC served O'Hare with special interrogatories, form interrogatories, and a request to produce documents. O'Hare and his attorney spent approximately 13 hours preparing responses.

---

[2]These sections of the employment agreement are entitled, respectively, "MRC's Ownership of Intangibles," "Employee Loyalty," "Nondisclosure and Nonuse of Confidential Information," and "Return of Written Information."

In June 2001, MRC wrote O'Hare requesting him to agree to submit his claims to arbitration. O'Hare did not respond.

In July 2001, MRC filed a motion to compel arbitration and sent O'Hare a letter suspending discovery. O'Hare filed opposition to which MRC replied.

Following a hearing, the trial court denied MRC's motion. Its minute order recites: "Defendants' motion to compel arbitration and for stay of proceedings is denied. The Employment Agreement states that the arbitration process will be governed by the AAA rules. Notwithstanding the AAA rules, the Employment Agreement does not satisfy the *Armendariz* requirement in that it lacks mutuality."

This appeal by MRC follows.

## DISCUSSION

### A. *Governing Legal Principles*

Code of Civil Procedure section 1281.2, subdivision (b) provides a trial court can deny a petition to compel arbitration if it determines "[g]rounds exist for the revocation of the agreement." In a similar vein, Code of Civil Procedure section 1281 provides a written arbitration agreement "is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

Civil Code section 1670.5, subdivision (a) provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

■ In this case, O'Hare urged, and the trial court agreed, the arbitration agreement should not be enforced because it was procedurally and substantively unconscionable under the standard set forth by the California Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).[3]

■ *Armendariz* held: " '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or

---

[3]Two weeks before oral argument, the California Supreme Court rendered its decision in *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*) in which it addressed some issues about mandatory arbitration not resolved in *Armendariz.*

' "one-sided" ' results. [Citation.]" (*Armendariz, supra,* 24 Cal.4th 83, 114.) Stated another way, "[s]ubstantive unconscionability focuses on the actual terms of the agreement, while procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the parties." (*American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1390 [54 Cal.Rptr.2d 477].) Both procedural and substantive unconscionability must be present before a court can refuse to enforce an arbitration provision based on unconscionability. However, the two elements need not be present in the same degree. " 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

As no extrinsic evidence was presented to the trial court, we review its determination de novo to determine whether the arbitration agreement is legally enforceable. (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1527 [60 Cal.Rptr.2d 138] (*Stirlen*)). We first address the question of substantive unconscionability and then turn to the issue of procedural unconscionability.

### B. *Substantive Unconscionability*

O'Hare claims the arbitration agreement is substantively unconscionable in three separate ways. We examine each one separately.

### 1. *Lack of Mutuality*

*Armendariz* held there must be a " 'modicum of bilaterality' in an arbitration agreement. Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' As has been recognized, ' "unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." ' [Citation.] If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for

Pursuant to our request, the parties filed letter briefs addressing the applicability of *Little* to this appeal. We reference *Little* where appropriate.

this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose. [Citation.]" (*Armendariz, supra*, 24 Cal.4th at pp. 117-118.)

■■■ O'Hare contends the arbitration provision lacks the required "modicum of mutuality" because it requires him to arbitrate all of his claims, expressly permits MRC to file a lawsuit seeking injunctive and equitable relief against him, and is silent about requiring MRC to arbitrate any other claim it may have against him. The contention is well taken.

In *Armendariz*, the arbitration clause required the employee to arbitrate all wrongful termination claims. Although, the agreement did not expressly grant the employer the right to litigate in court its claims against the employee, the court found that was the clear implication of the agreement. (*Armendariz, supra*, 24 Cal.4th at p. 120.) It reasoned: "Obviously, the lack of mutuality can be manifested as much by what the agreement does not provide as by what it does." (*Ibid.*) The court explained that "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Ibid.*) In language equally applicable to this case, the court concluded the arbitration provision lacked mutuality "because it requires the arbitration of employee—but not employer—claims arising out of a wrongful termination. An employee terminated for stealing trade secrets, for example, must arbitrate his or her wrongful termination claim under the agreement while the employer has no corresponding obligation to arbitrate its trade secrets claim against the employee." (*Ibid.*) That is the situation in this case. O'Hare is required to arbitrate any work-related claim, including a discharge based upon the claim he breached the explicit obligations set forth in sections 7, 8, 9, and 10 about nondisclosure of trade secrets and confidential information (see fn. 2, *ante*). There is, however, no requirement that MRC arbitrate any claim O'Hare breached those obligations. In fact, the arbitration provision explicitly reserves MRC's right to file a lawsuit seeking injunctive and equitable relief based upon O'Hare's alleged breaches of the confidentiality provisions.

MRC's arguments to support a contrary conclusion are not well taken.

First, MRC argues its obligation to arbitrate should be *implied* because it is not expressly excluded. In particular, MRC argues that because the agreement only explicitly excepted from arbitration its right to seek injunctive and equitable relief, that means MRC agreed to arbitrate all other claims

against O'Hare. For instance, in its reply brief MRC boldly states: "[T]he parties' employment brief **requires** *both* O'Hare and MRC to arbitrate **all claims** arising out of the agreement, except for claims for injunctive relief made by MRC against O'Hare for violating his agreement not to disclose or misappropriate MRC's valuable trade secrets." MRC argues, for example, it would be compelled to arbitrate an action for money damages against O'Hare predicated upon the claim he breached the confidentiality provisions of the contract. This argument is unpersuasive for several reasons.

For one thing, MRC fails to acknowledge all of the language in the employment contract. Section 11, entitled "MRC's Remedies for Breach," provides that O'Hare agrees that "MRC, *in addition to all other rights*, shall have the right to file a lawsuit [for injunctive and equitable relief]." (Italics added.) The language we have italicized undermines MRC's argument that we should imply that MRC agreed to arbitrate any claim against O'Hare other than that for injunctive and equitable relief. Instead, it establishes MRC was also preserving its right to file *any* lawsuit against O'Hare. Section 11 merely emphasized to O'Hare that MRC would file an action for injunctive and equitable relief were he to breach any of his obligations because that was the harm MRC most wanted to deter. The specification of that remedy by MRC does not mean MRC otherwise waived any other rights to seek judicial relief and agreed to assert any other claims in arbitration. The inclusion of the phrase "in addition to all other rights" can only mean MRC was similarly preserving the right to file any lawsuit it felt in its interest. Otherwise, the phrase "in addition to all other rights" has no import. As MRC itself points out, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) MRC's tepid argument that "in addition to all other rights" refers to MRC's right to seek arbitration of any other claim is patently meritless given that nothing in the agreement granted MRC that right.

Furthermore, the next paragraph in the agreement is section 12, the arbitration provision. It explicitly states O'Hare's claims are to be arbitrated and concludes with a statement that MRC's rights to injunctive relief, set forth in the immediately preceding section, are not subject to any require-ment of arbitration. The arbitration provision's repeated use of the word "you" to refer to O'Hare is further indication that only his claims but not those of MRC are subject to arbitration. And the immediate juxtaposition of section 11 (reserving MRC's right to file an action for injunctive and equitable relief) with section 12 (compelling O'Hare to arbitrate all of his claims) clearly conveys MRC has no obligation to arbitrate any claim it may have against O'Hare. "Obviously, the lack of mutuality can be manifested as

much by what the agreement does not provide as by what it does." (*Armendariz, supra*, 24 Cal.4th at p. 120.)

At oral argument, MRC placed great reliance upon the last sentence in section 12 to construct an argument that it implicitly agreed to arbitrate most of its claims against O'Hare. That sentence reads: "Neither MRC's right to file a lawsuit seeking an injunction nor MRC's right to injunctive relief is subject to arbitration or to the provisions of Section 12." MRC argues because *this sentence* only excepts from arbitration MRC's right to file a lawsuit for injunctive relief, it means MRC *implicitly* agreed it could not file a lawsuit for any other claim (e.g., money damages) and any other such claim would be subject to arbitration. We are not persuaded. As already explained, the sentence in section 11 that "MRC, in addition to all other rights" can file a lawsuit for equitable relief clearly reserved to MRC the right to file any lawsuit on any theory for any form of relief. Understood in context, the sentence upon which MRC now relies is nothing more than a reiteration that the right specifically granted in Section 11 to file a lawsuit for equitable relief was not subject to arbitration. MRC no doubt sought to make that point because, as explained below, the primary remedy it wished to preserve and enforce against O'Hare was a lawsuit for injunctive relief to prevent disclosure, dissemination, and sharing of confidential information and trade secrets.

In a similar vein, we reject MRC's argument that it implicitly agreed to arbitrate a claim for money damages. Section 11, drafted by MRC, essentially states that in the event of a breach by O'Hare of any of the contract's confidentiality provisions, the remedy at law (a claim for money damages) is inadequate. In fact, as explained below, that is the "business reality" MRC asserts to justify its explicit exception to arbitration. Consequently, even were we to accept MRC's interpretation of the contract, if MRC initiated an action against O'Hare, the likelihood that it would be required to arbitrate is slim, if not nil. (See *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 175, 176 [116 Cal.Rptr.2d 671] (*Mercuro*); *Stirlen, supra*, 51 Cal.App.4th 1519, 1541.)

In light of this analysis, MRC errs in relying upon Civil Code section 1655 to urge a requirement that it arbitrate be implied into the agreement. The statute reads: "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention." Here the

contract *does* manifest a contrary intent: MRC is not required to arbitrate any of its claims against O'Hare.[4]

MRC next argues "[t]he arbitration's provision's bilaterality is not vitiated by the limited exception for injunctive relief" because there is a legitimate business interest for this exception. We disagree. As explained above, the agreement does not just except from arbitration MRC's right to obtain injunctive relief against O'Hare; it exempts MRC from arbitrating any claim against O'Hare. In any event, the requisite business justification for exempting a request for injunctive relief is lacking. Our Supreme Court explained: "[I]f an employer does have reasonable justification for the arrangement—i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum—such an agreement would not be unconscionable. Without such justification, we must assume that it is." (*Armendariz, supra,* 24 Cal.4th at p. 120.)

MRC argues that "given the highly confidential and proprietary nature of the auditing and consulting work that MRC does, and the access to that information inherent in O'Hare's position," it "could not adequately and efficiently protect these assets without access to court-ordered and court-enforced injunctive relief—both provisional and permanent." Two decisions from the Courts of Appeal have rejected an essentially identical argument on the basis a party subject to arbitration already has the right to obtain that relief. (*Mercuro, supra,* 96 Cal.App.4th 167, and *Stirlen, supra,* 51 Cal.App.4th 1519.)

In regard to obtaining relief pending the outcome of the arbitration proceeding, Code of Civil Procedure section 1281.8, subdivision (b) provides: "A party to an arbitration agreement may file [in court] an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." The statute "was enacted primarily to allow a party to an arbitration to obtain provisional judicial remedies without waiving the right to arbitrate[.] [Citations.]" (*Woolley v. Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520, 1527 [278 Cal.Rptr. 719].) As both Courts of Appeal noted: " 'Provisional relief' as used in the statute includes preliminary injunctions and temporary restraining orders." (*Mercuro, supra,* 96 Cal.App.4th at p. 177, citing *Stirlen, supra,*

---

[4]MRC cites two cases for the proposition that "even where the employer drafts a provision that obligates the employee to arbitrate his claims, but is silent as to the employer's obligation to do the same, it is proper to imply a term requiring the arbitration obligation to run both ways." The two cases are not persuasive. They are from the United States Court of Appeals, Fourth Circuit, and predate *Armendariz.*

51 Cal.App.4th at p. 1537.) Accordingly, "[t]he unilateral right to litigate rather than arbitrate claims . . . cannot be justified by the need for provisional remedies." (*Stirlen, supra,* 51 Cal.App.4th at p. 1537.)

In regard to obtaining injunctive relief following the conclusion of arbitration, it is well settled arbitrators commonly provide equitable relief as part of their decision. (*Mercuro, supra,* 96 Cal.App.4th at pp. 177-178, including cases cited in fn. 17.) In particular, an arbitrator may award permanent injunctive relief, a point MRC concedes. (See *Swan Magnetics, Inc. v. Superior Court* (1997) 56 Cal.App.4th 1504 [66 Cal.Rptr.2d 541].)[5] We reject MRC's vapid argument that "[w]hile an arbitrator can issue injunctive relief, only a court can ultimately enforce it [so that] it is far more efficient for MRC to bring this particular type of claim in court in the first instance." Regardless of the particular relief granted, any arbitrator's award is enforceable only when confirmed as a judgment of the superior court. (See *Jones v. Kvistad* (1971) 19 Cal.App.3d 836, 840 [97 Cal.Rptr. 100]; Code Civ. Proc., § 1287.6.) Carried to its logical conclusion, MRC's argument would mean any party could carve out for itself an exception to an arbitration provision by simply urging that *for it* judicial relief is more expeditious. We decline to follow that path.

■ In sum, MRC's argument it needed to except its rights to file an action for injunctive relief fails because that remedy is available both prior to and at the conclusion of arbitration.

MRC's argument also fails on another basis: it is too broad. Section 11 of the contract not only granted MRC the right to file a lawsuit to seek injunctive relief; it also provided MRC could "seek any other equitable relief that may be appropriate." In language equally applicable to this case, the ·Mercuro court concluded: "Furthermore, even assuming 'business realities' would justify exempting claims for injunctive relief to protect intellectual property rights, the exemption sweeps too broadly because it covers not only claims for injunctive relief but claims for *any* equitable relief involving intellectual property issues." (*Mercuro, supra,* 96 Cal.App.4th 167, 177.)

Lastly, relying upon *Little, supra,* 29 Cal.4th 1064, MRC argues "to the extent that [this court] finds the carve-out for injunctive relief to be unconscionable, [*Little*] dictates that [we] should sever that provision alone and enforce the rest of the agreement, which was clearly drafted in good faith."

---

[5]Rule 34d of the American Arbitration Association National Rules for the Resolution of Employment Disputes provides: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court."

This argument misconstrues *Little*. There, the Supreme Court found one discrete portion of the arbitration agreement—the arbitral appeal provision—to be unconscionable. The court concluded that because only this single provision was unconscionable, it could be severed and the rest of the arbitration agreement left intact. To support its conclusion that severance of the singular unconscionable provision was the appropriate remedy as opposed to a refusal to enforce the entire arbitration agreement, the court found it significant there was no indication the one-sided appellate provision had been included in bad faith.

This case presents a completely different scenario. As explained above, MRC did not simply "carve out" a provision entitling it to file a lawsuit for injunctive relief. MRC drafted a completely one-sided agreement compelling O'Hare to arbitrate all of its claims while allowing MRC to file a lawsuit on any claim it had against him. Because unconscionability permeates the entire agreement, severance is not appropriate. (*Armendariz, supra,* 24 Cal.4th at p. 124.) "[T]here is no single provision [we] can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, [we] would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." (*Id.* at pp. 124-125.) We have no explicit or implicit authority to do so. (*Ibid.*)

## 2. Costs Provision

O'Hare contends the costs provision applicable to the arbitration proceeding is inconsistent with *Armendariz*'s requirements. We agree.

In *Armendariz*, the arbitration agreement provided the parties would share the costs of arbitration. (*Armendariz, supra,* 24 Cal.4th 83, 107.) There, as here, the employees were seeking to vindicate, in part, rights accorded by the FEHA. *Armendariz* held "that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer." (*Id.* at pp. 110-111.)

The 1991 employment contract is silent on the issue of the allocation of costs. However, section 12 of the contract explicitly incorporates the rules of the American Arbitration Association (AAA). MRC concedes the applicable rule requires the parties to equally bear the expenses of arbitration unless

they agree otherwise or the arbitrator directs otherwise and to equally bear the arbitrator's compensation "unless they agree otherwise, or unless the law provides otherwise."[6] The rule clearly contravenes *Armendariz*.

In the trial court, MRC essentially conceded this point. Its reply memorandum in support of its motion to compel arbitration "expressly acknowledge[d]" it was "prepared to pay such costs." On this appeal, MRC reaffirms that position and therefore argues the question of allocation of costs "is a non-issue." This approach misses the mark. In *Armendariz*, the court found an after-the-fact expression of willingness by the employer to amend the arbitration provision to bring it into conformity with law to be wanting. It reasoned: "[W]hether an employer is willing, now that the employment relationship has ended [to change a provision of an arbitration agreement so it conforms to law] does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.' " (*Armendariz, supra*, 24 Cal.4th at p. 125, quoting *Stirlen, supra*, 51 Cal.App.4th 1519, 1535-1536.) It therefore follows that MRC's willingness to bear all costs in the arbitration proceeding does not change the fact the arbitration provision is substantively unconscionable.

## 3. *Denial of Discovery*

■ O'Hare next contends the arbitration provision is substantively unconscionable because it denies him any right to discovery. For reasons to be explained, we need not reach the ultimate merits of this claim.

As set forth above, section 12, the arbitration provision, includes the explicit statement: "There shall be no pre-arbitration discovery." *Armendariz, supra*, 24 Cal.4th 83, held that when, as here, there is a claim of employment discrimination based upon violation of the FEHA, "adequate discovery is indispensable" to the vindication of the statutory claim. (*Id.* at p. 104.) The court explained employees "are at least entitled to discovery

---

[6]Former rule 39 of the National Rules for the Resolution of Employment Disputes, the pertinent rule at the time of this dispute, provided: "Unless otherwise agreed by the parties, the expenses of witnesses for either side shall be borne by the party producing such witnesses. All expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the costs relating to any proof produced at the direction of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator directs otherwise in the award. [¶] The arbitrator's compensation shall be borne equally by the parties unless they agree otherwise, or unless the law provides otherwise."

sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review." (*Id.* at p. 106; see also *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1332 [83 Cal.Rptr.2d 348].)

MRC concedes the existence of the employment contract's prohibition on discovery and *Armendariz*'s holding. Nonetheless, MRC contends the discovery would be allowed in this arbitration proceeding based upon the following. Section 12 of the employment contract provides the arbitration will be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect." O'Hare filed his lawsuit in May 2000 and MRC filed its motion to compel arbitration in July 2001. Effective January 2001, rule 7 of the National Rules for the Resolution of Employment Disputes promulgated by the AAA provided: "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." Recognizing that this rule conflicts with absolute prohibition on discovery found in the arbitration agreement itself, MRC points to rule 1 which provides: "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association . . . . If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules." Based upon the above, MRC argues these rules trump the specific contractual provision barring discovery and therefore bring the arbitration agreement within *Armendariz*'s requirements.

The argument is not persuasive. For one thing, it is pregnant with the concession that when the contract was signed in 1991, the governing arbitration rules did not permit discovery. At oral argument, MRC's counsel conceded as much. Civil Code section 1670.5, subdivision (a) instructs that a judicial determination of unconscionability focuses on whether the contract or any of its provisions were "unconscionable at the time it was made." MRC's argument that the present day rules should be construed to permit discovery in an arbitration ordered under this contract is nothing more than an attempt to make an end run around the legislative direction to evaluate the contract based upon its terms at the time of execution. "The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties." (*American Software, Inc. v. Ali, supra,* 46 Cal.App.4th 1386, 1391.) MRC cites no authority for the proposition it should be relieved of the effect of an unlawful provision it inserted in the

arbitration provision because of the serendipity that the AAA rules changed since the employment contract was executed.

In any event, we need not reach the merits of this discrete issue because even a decision in MRC's favor on this one issue would not change our ultimate conclusion: substantive unconscionability so otherwise permeates the arbitration provision that it should not be enforced. In so concluding, we rely, by analogy, on *Armendariz*'s response to the employer's request in that case to sever from the arbitration agreement its unconscionable provisions. The *Armendariz* court recognized statutory authority for this proposition. Civil Code section 1670.5, subdivision (a) provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." The *Armendariz* court held if the central purpose of the contract is tainted by the substantive unconscionability, the contract cannot be enforced. Severance is permissible only if the unconscionable portion is collateral to the main purpose of the contract. (*Armendariz, supra*, 24 Cal.4th at p. 124; see also *Mercuro, supra*, 96 Cal.App.4th 167, 184-185.) In *Armendariz*, the court found the arbitration agreement under review had two unlawful provisions and therefore concluded: "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra*, 24 Cal.4th at p. 124.)

By a parity of reasoning, substantive unconscionability permeates the arbitration provision in this case. As explained earlier, the agreement lacks any modicum of bilaterality because O'Hare is compelled to arbitrate all claims against MRC but MRC has expressly reserved any and all rights to file a lawsuit against O'Hare regardless of the theory of liability or relief requested. In addition, the agreement improperly requires O'Hare to share costs and its facial prohibition of discovery is in derogation of law. The arbitration provision is therefore unenforceable in its entirety. Consequently, we need not decide whether MRC's argument that the facial prohibition on discovery is, in fact, "trumped" by incorporation of the rules of the AAA is correct. Given the particulars of this case, the issue is essentially moot since a conclusion on that one point in MRC's favor would not change our ultimate conclusion that the trial court properly denied MRC's petition to compel arbitration.

## C. *Procedural Unconscionability*

■ Procedural unconscionability focuses on whether the arbitration provision was the result of oppression or surprise due to unequal bargaining

power between the employer and employee. It "turns on adhesiveness—a set of circumstances in which the weaker or 'adhering' party is presented a contract drafted by the stronger party on a take it or leave it basis. To put it another way, procedural unconscionability focuses on the oppressiveness of the stronger party's conduct." (*Mercuro, supra*, 96 Cal.App.4th 167, 174, fns. omitted.)

In regard to what a party is required to show on this issue, *Armendariz* explained: " 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] *In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable*, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114, second italics added.)

 Here, no extrinsic evidence about the negotiations, if any, preceding the execution of the 1991 employment contract, was presented. However, contrary to MRC's argument, that does not preclude a finding of procedural unconscionability. In this case, the contract itself creates a sufficient inference of procedural unconscionability.

We have already determined substantive unconscionability permeates this contract. The agreement is completely one-sided: without justification, it requires arbitration of all of O'Hare's claims against MRC but leaves MRC free to pursue all remedies, including the right to file a lawsuit. It improperly requires O'Hare to share costs. And it includes a facial prohibition on discovery. Given the multiple unlawful provisions present, a very low showing of procedural unconscionability is required to bar enforcement of the arbitration provision.

As *Armendariz* noted: "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra*, 24 Cal.4th 83, 115.) *Armendariz* cited with approval the analysis in *Stirlen, supra*, 51 Cal.App.4th 1519, that a "high-level executive" paid $150,000 a year "had no realistic ability to

modify the terms of the employment contract." (*Armendariz, supra*, 24 Cal.4th at p. 116, citing *Stirlen, supra*, 51 Cal.App.4th at pp. 1533, 1534.)

In this case, the 1991 employment contract begins: "Confirming our recent conversation, this Agreement sets forth the terms of your employment." The typed eight-page document appears to be a boilerplate contract given to all employees who have access to confidential information. It contains multiple generic provisions. The only portion filled in by hand is O'Hare's salary: $50,000 a year. Nothing in this document suggests it was the product of "give and take." In fact, the arbitration provision is so one-sided it defies credulity to suggest either O'Hare had any input on that issue or any expressed desire to change its terms would have been considered or honored. In sum, it is reasonable to infer procedural unconscionability.

Our conclusion on this point is fortified by *Little, supra*, 29 Cal.4th 1064. In that case, the employee "rose to become [a] service manager" for a car dealership before he was fired. (*Id.* at p. 1069.) There, as here, no extrinsic evidence was offered about the negotiations, if any, that occurred in regard to the execution of his employment contract. The opinion stated that over an 18-month period the employee had "signed three nearly identical arbitration agreements while employed." (*Ibid.*) On the issue of whether the employee had established procedural unconscionability, the court quoted the above passage from *Armendariz, supra*, 24 Cal.4th at page 115, and then simply concluded: "It is clear in the present case that [the employer had] imposed on [the employee] an adhesive arbitration agreement." (*Little*, at p. 1071.) The same conclusion applies to this case.

### DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 25, 2003. George, C. J., did not participate therein.