Filed 5/11/26  Laliberte v. Kellermeyer Bergensons Services CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JUSTIN LALIBERTE et al., | |
|     Plaintiffs and Respondents, | A172565 |
| v. | |
| KELLERMEYER BERGENSONS SERVICES, LLC, | (San Bernardino County Super. Ct. No. CIVSB2329273) |
|     Defendant and Appellant. | |

Defendant Kellermeyer Bergensons Services, LLC (Kellermeyer) appeals from the denial of its motion to compel arbitration of claims asserted by its former employees, plaintiffs Justin Laliberte and Ashley Lewis.  We conclude the trial court properly denied the motion on unconscionability grounds.  We therefore affirm.

## I.  BACKGROUND

Kellermeyer is a company that "delivers essential facility services to its customers to maintain clean and healthy operations."  Plaintiffs worked as janitors for Kellermeyer, and Lewis also later worked as a supervisor. Plaintiffs brought this action pursuant to the Labor Code Private Attorneys General Act of 2004 (Labor Code, § 2699 et seq.; PAGA), alleging that Kellermeyer violated the Labor Code and applicable Wage Orders.

1

Kellermeyer moved to compel arbitration of plaintiffs' individual claims and stay litigation of the non-individual claims pending completion of the arbitration. Kellermeyer argued plaintiffs entered into binding arbitration agreements and their individual claims came within the scope of the agreements.

A senior director at Kellermeyer attested that Laliberte and Kellermeyer entered into a mutual agreement a few years after Laliberte began working for Kellermeyer, and that Lewis entered into a mutual agreement to arbitrate with Kellermeyer on or around the day she began working for Kellermeyer. Copies of the arbitration agreements were attached to the director's declaration.

The two arbitration agreements appear to be almost identical aside from the size of the font. The agreements are two to three pages long and are typed, stand-alone documents entitled, "Mutual Agreement to Arbitrate." With one exception (PAGA representative claims), the agreements cover "any and all claims or disputes" between the parties and "all disputes" between the employee and third parties related to Kellermeyer. Per the agreements, they "shall survive the termination of [the employee's] employment and shall remain in full force and effect thereafter." The agreements also contain a severance clause: "In the event any portion of this Arbitration Agreement is deemed invalid, void or unenforceable, it shall be severed and the remainder of this Arbitration Agreement will remain valid and enforceable."

Plaintiffs opposed the motion to compel, asserting that the arbitration agreements were procedurally and substantively unconscionable. They contended the court should decline to enforce the agreements rather than sever the unconscionable terms. Plaintiffs further argued that Kellermeyer

2

failed to establish the existence of an arbitration agreement between it and Laliberte. Lewis did not dispute that she signed the arbitration agreement.

Accompanying the opposition were Laliberte and Lewis's declarations. Laliberte stated in his declaration that he did "not believe that [was his] signature" on the arbitration agreement, that he had never seen the document until his attorney showed it to him, and that he "never electronically signed th[e] agreement or signed" it by hand.

In her declaration, Lewis said that when she first began working for Kellermeyer, she met with her supervisor to fill out her employment documents, and there "were many documents that [she] had to sign." She said she knew she "needed to complete all the documents to start work." She stated her manager "briefly explained" the documents, but Lewis "was not allowed to review them or read them over" or negotiate the terms of the agreement, and she "felt very rushed." Moreover, her manager told her that "arbitration was when the company would help their employees if they got in legal trouble" but never explained that Lewis would be giving up her right to file a lawsuit in signing the arbitration agreement.

In reply, Kellermeyer submitted the declaration of a forensic document examiner, who concluded that Laliberte wrote the signature on the arbitration agreement.

Without stating its reasoning, the trial court denied Kellermeyer's motion to compel arbitration.[1]

---

[1] Citing a declaration its counsel filed in this appeal, Kellermeyer argues that the trial court failed to issue a statement of decision after both parties requested one. Counsel's declaration is not a part of the trial court record (see *Knapp v. City of Newport Beach* (1960) 186 Cal.App.2d 669, 679), and Kellermeyer has presented no authority demonstrating that we can consider the declaration in deciding the appeal. We therefore disregard Kellermeyer's claim that the parties requested a statement of decision.

## II. DISCUSSION

Kellermeyer argues that the trial court erred in denying its motion to compel arbitration because it met its burden of proving the existence of arbitration agreements between it and plaintiffs. Additionally, it asserts that the agreements are not unconscionable. Plaintiffs disagree on both counts and further assert that the agreements are unenforceable based on a provision carving out PAGA claims from the agreements' scope. We find the unconscionability of the agreements dispositive and therefore affirm.[2] (See *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 445 ["[u]nconscionability in a contract is one reason a court may decline enforcement" of a contract].)

### A. Governing Law

The doctrine of unconscionability " ' "refers to ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' " ' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 (*Baltazar*); *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1265 (*Farrar*).) There is both a procedural and substantive aspect of

---

[2] Kellermeyer requests judicial notice of documents filed in a different action that Laliberte brought against Kellermeyer. Kellermeyer seeks to use these documents to show that Laliberte entered into the arbitration agreement and to support its argument, raised for the first time in its reply brief, that the trial judge in the other action concluded the arbitration agreement was not unconscionable. We do not reach the issue of whether Laliberte entered into the arbitration agreement, nor do we consider arguments raised for the first time in the reply. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 592.) The request for judicial notice is therefore denied. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

4

unconscionability; the former focuses on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).[3])

" 'Both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract under the doctrine of unconscionability although " 'they need not be present in the same degree.' " [Citation.] Essentially, the court applies a sliding scale to the determination: " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " ' " (*Farrar*, *supra*, 9 Cal.App.5th at p. 1265.) Absent conflicting evidence, the trial court's unconscionability determination is a question of law subject to de novo review. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Farrar*, at p. 1265.)

### B. Substantive Unconscionability

We first conclude that the arbitration agreements are substantively unconscionable.

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' " (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) This standard refers to " 'the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad

---

[3] *Armendariz* was abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339–340.

bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party" [citation].' " (*Baltazar*, *supra*, 62 Cal.4th at p. 1244.)

In their opposition to the motion to compel arbitration, plaintiffs claimed the arbitration agreements were substantively unconscionable because they (1) were overly broad in scope; (2) indefinite in duration; (3) lacked mutuality; (4) unlawfully limited the applicable statute of limitations; (5) unlawfully waived plaintiffs' right to statutory attorney fees; (6) unlawfully waived their right to pursue or participate in representative PAGA actions; (7) unlawfully waived claims for public injunctive relief; and (8) required plaintiffs to litigate non-arbitrable claims unreasonably far from where they reside.

Because unconscionability was the only basis presented by plaintiffs for denying the motion to compel arbitration as to both plaintiffs, we presume the trial court concluded that plaintiffs made a sufficient showing of substantive unconscionability. "A judgment . . . of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Even though our review is de novo, it is Kellermeyer's burden on appeal to affirmatively show the trial court erred by presenting reasoned argument and citations to authority. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [appellant's "failure to address a basis of the court's substantive unconscionability ruling requires us to affirm the court's order"].)

We conclude Kellermeyer has not met its appellate burden to show that the first three of the foregoing elements in the arbitration agreements are not substantively unconscionable.

## 1. *Lack of Mutuality*

We begin with the agreements' lack of mutuality, as alleged by plaintiffs. The agreements require plaintiffs to arbitrate "all disputes" between them and Kellermeyer's "fiduciaries, administrators, affiliates, subsidiaries, parent companies, [Kellermeyer's] agents, representatives, officers, directors, shareholders and any employees of [Kellermeyer] if such employees are acting within their role as an employee within the scope of their employment, customers, and all successors and assigns or any of them." The agreements further provide that "each of [Kellermeyer's] customers at which employees perform work are intended third-party beneficiaries to this Arbitration Agreement." Plaintiffs contend these provisions provide benefits to third party beneficiaries only in Kellermeyer's favor without any reciprocal benefits to plaintiffs.

*Cook v. University of Southern California* (2024) 102 Cal.App.5th 312 (*Cook*), relied on by plaintiffs, found similar provisions substantively unconscionable. In *Cook*, the arbitration agreement required the plaintiff employee to arbitrate any and all claims she may have against the defendant employer " 'or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise.' " (*Id.* at p. 317.) The appellate court concluded that the agreement was substantively unconscionable for lack of mutuality, reasoning that "the agreement provides benefits to broad swaths of third party beneficiaries only in favor of [the defendant] without any showing of justification for this one-sided treatment." (*Id.* at pp. 326–327.) As such, the agreement conferred a benefit on the defendants and its "broadly defined 'related entities' that [was] not mutually afforded to [the plaintiff]." (*Id.* at p. 327.)

Kellermeyer contends *Cook* is distinguishable because unlike the agreement in *Cook*, the arbitration agreements here require the employer and the third party beneficiaries to arbitrate claims they have against the employee.  But the agreement in *Cook* did, in fact, require the employer to arbitrate all claims it had against the employee.  (*Cook*, *supra*, 102 Cal.App.5th at p. 321.)  Moreover, as to the third party beneficiaries, the *Cook* court concluded that, "in practical effect," the agreement was "unjustifiably one sided."  (*Id.* at p. 327.)  The court explained, "There is no question that it is more difficult for a party to enforce an arbitration agreement against a nonsignatory than it is for a nonsignatory to enforce an arbitration agreement against a party."  (*Ibid.*)  Under the law governing third party beneficiaries, nonsignatories may enforce an agreement against a party to the agreement simply by showing they are intended third party beneficiaries of the agreement, while a party seeking to enforce an agreement against third party beneficiaries "would have to show they actually accepted a benefit under the agreement."  (*Id.* at p. 328.)  "It is difficult to imagine how [the plaintiff] could carry this burden to compel [the defendant's] employees and agents to arbitration unless those specific agents or employees first moved to compel arbitration under the agreement."  (*Ibid.*)

This reasoning applies equally to the arbitration agreements here, even if they do not appear one-sided on their face.  (See *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1079–1080 [concluding agreement's "modicum of bilaterality" was "inconsequential" in light of the "practical reality"]; *Gurganus v. IGS Solutions LLC* (2025) 115 Cal.App.5th 327, 339 [looking to "practical effect" of provision in evaluating unconscionability].)

Kellermeyer further argues this case is distinguishable from *Cook* because Kellermeyer provided "legitimate business reasons" for the lack of

mutuality. While true that "employment contracts can provide a 'margin of safety' that grants extra protection to the party with superior bargaining power if there is a legitimate commercial need for doing so," the " 'business realities' that give rise to that special need" must be explained in the contract itself or factually established. (*Cook, supra,* 102 Cal.App.5th at p. 324.) Kellermeyer does not provide any citations to the record to support its assertion that it had legitimate business reasons for the lack of mutuality. Accordingly, Kellemeyer has not established a legitimate justification for the lack of mutuality.

Lastly, Kellermeyer contends *Cook* is distinguishable because the arbitration agreement there required a written agreement to modify the agreement, while, in contrast, Kellermeyer "did not limit how the Agreement could be subsequently modified or terminated." Kellermeyer does not explain why this distinction means the lack of mutuality in the arbitration agreements is not unconscionable. We therefore do not disturb the trial court's implicit conclusion that the agreements' lack of mutuality is substantively unconscionable.

### 2. *Scope and Duration of the Agreements*

Similarly concerning are the agreements' broad scope and indefinite duration. The agreements cover "any and all claims or disputes . . . including but not limited to any disputes . . . arising out of or related to your employment with the Company, . . . *and non-employment related matters.*" (Italics added.) The agreements further provide, "The provisions of this Arbitration Agreement shall survive the termination of my employment and shall remain in full force and effect thereafter." As plaintiffs explain, these provisions, when combined with the third party beneficiary provision, would require plaintiffs to arbitrate any claims they have against broad swaths of

9

parties, even if the claims arise decades after their employment with Kellermeyer ended. Potential claims include personal injury claims based on the negligence of Kellermeyer's agents or premises liability claims at any building for which Kellermeyer provides facility services.

*Cook* is again instructive. There, the court found language requiring the plaintiff to arbitrate claims unrelated to her employment with the defendant substantively unconscionable. (*Cook*, *supra*, 102 Cal.App.5th at p. 321, 325.) It further concluded that the arbitration agreement was unconscionable because it survived indefinitely following the termination of the plaintiff's employment with the defendant. (*Id.* at p. 325.)

Kellermeyer does not address these elements of the arbitration agreements, despite plaintiffs relying on *Cook* in the trial court to argue that the agreements' scope and duration are unconscionable. While an arbitration agreement that covers claims unrelated to the plaintiff's employment may not be per se unconscionable, Kellermeyer has not attempted to explain why the circumstances in this case require a finding that the broad scope and indefinite duration of the agreements are not unconscionable, nor does the record show that it did so in the trial court. (See *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911 ["An evaluation of unconscionability is highly dependent on context"].) Thus, Kellermeyer has forfeited any claim the trial court erred in concluding the agreements' scope and duration were unconscionable. (*Swain v. LaserAway Medical Group, Inc.*, *supra*, 57 Cal.App.5th at p. 72; *Cook*, *supra*, 102 Cal.App.5th at p. 325 [concluding employer forfeited claim that arbitration agreement should be construed as terminable at will for failing to raise it in the trial court].)

In sum, the arbitration agreements contain at least three terms that are substantively unconscionable, resulting in a high degree of substantive

unconscionability. (See *Cook*, *supra*, 102 Cal.App.5th at pp. 321–329; *Swain v. LaserAway Medical Group, Inc.*, *supra*, 57 Cal.App.5th at p. 73 [lack of mutuality "indicates a high degree of substantive unconscionability"].)

### C. Procedural Unconscionability

" '[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.' " (*Baltazar*, *supra*, 62 Cal.4th at p. 1244.) "[C]ourts must be 'particularly attuned' to this danger in the employment setting, where 'economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.' " (*Ibid.*)

Plaintiffs argued in the trial court that the arbitration agreements were procedurally unconscionable in part because they were contracts of adhesion, i.e., "a standardized contract written entirely by a party with superior bargaining power" that is offered to the weaker party on a " 'take it or leave' " basis "without opportunity to bargain." (*Ponder v. Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 718.) In its opening brief, Kellermeyer does not dispute that the arbitration agreements are contracts of adhesion. It instead argues that plaintiffs were required to show some other indication of oppression or surprise to invalidate the agreements, and that Lewis's declaration was insufficient to establish oppression or surprise.

Plaintiffs respond that the existence of an adhesion contract establishes at lease some degree of procedural unconscionability. Plaintiffs are correct. " 'Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear

11

within them the clear danger of oppression and overreaching." ' "
(*Baltazar*, *supra*, 62 Cal.4th at p. 1244.)

Apparently acknowledging this authority, Kellermeyer argues in its reply that plaintiffs were required to produce admissible evidence establishing that the arbitration agreements were "standardized" contracts that were on a "preprinted form" and offered on a "take-it-or-leave-it basis." That issue is forfeited because plaintiffs had no opportunity to respond. (See *Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 592 ["[t]hese reply arguments are forfeited as tardy, because appellants must give the other side fair notice and an opportunity to respond"].)

In any event, in the employment context, procedural unconscionability can be inferred from the contract itself. (*O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 283 (*O'Hare*).) As our Supreme Court noted, "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz*, *supra*, 24 Cal.4th at p. 115; see also *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244 ["To establish procedural unconscionability, [the employee] was not required to show she attempted to negotiate the terms of the Agreement because the imbalance of bargaining power is apparent from the relationship between the parties"], called into doubt on another ground in *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 909.)

In *O'Hare*, there was no extrinsic evidence offered about the negotiations proceeding the execution of the employment agreement, which included an arbitration provision. (*O'Hare*, *supra*, 107 Cal.App.4th at p. 283.)

12

The appellate court nonetheless rejected the defendant's argument that the lack of extrinsic evidence precluded a finding of procedural unconscionability. (*Ibid.*) Rather, it concluded that "the contract itself create[d] a sufficient inference of procedural unconscionability." (*Ibid.*) The employment contract stated that it "sets forth the terms of your employment," the document was typed and "appears to be a boilerplate contract given to all employees who have access to confidential information," it contained "multiple generic provisions," and "[n]othing in [the] document suggest[ed] it was the product of 'give and take.'" (*Id.* at p. 284.)

Here, as in *O'Hare*, the agreements are typed (except for plaintiffs' signatures) and appear to consist of generic, boilerplate provisions given to all employees. Indeed, the agreements given to Lewis and Laliberte at separate points in time are almost identical aside from font size. Although the agreements state that the employee "should feel free to consult an attorney" and is signing the agreement "knowingly, willingly, and voluntarily," the agreements also state in the first paragraph that "the promise to arbitrate is made in exchange for continued employment with the Company" or, for "new hires," for "the offer of employment with the Company." The latter provision strongly suggests the agreements were presented on a "take it or leave it" basis. Moreover, the record shows that Laliberte and Lewis were not high-ranking employees with Kellermeyer at the time they allegedly signed the agreements, and thus there was an obvious imbalance of bargaining power between the parties. (See *Carbajal v. CWPSC, Inc.*, *supra*, 245 Cal.App.4th at p. 243.) From these circumstances, it is reasonable to infer that the agreements are contracts of adhesion.

Lewis's declaration supports the notion that the arbitration agreement was adhesive and even raises the degree of procedural unconscionability, at

least with respect to her. Lewis attested that she signed the agreement when she met with her supervisor "to fill out [her] employment documents." She said she "knew [she] needed to complete all the documents to start work." She further declared that her supervisor explained that "arbitration was when the company would help their employees if they got in legal trouble," which was not true according to the agreement. These facts support a low to moderate degree of procedural unconscionability. (See *Velarde v. Monroe Operations, LLC* (2025) 111 Cal.App.5th 1009, 1018–1019 [degree of procedurally unconscionability greater where employer "expressly misled [the employee] as to the nature and the terms of the agreement"]; *id.* at pp. 1015–1016 [contract was adhesive where employee was required to sign the agreement or "she could not begin working"].)

The arbitration agreements therefore contain at least minimal procedural unconscionability. (See *Baltazar*, *supra*, 62 Cal.4th at p. 1244.) Given the high degree of substantive unconscionability, minimal procedural unconscionability is sufficient to render the agreements unconscionable. (See *Cook*, *supra*, 102 Cal.App.5th at pp. 321–328 [concluding agreement is unconscionable based on the agreement's broad scope, indefinite duration, lack of mutuality, and low degree of procedural unconscionability].)

### D. Severability

Kellermeyer contends the substantively unconscionable provisions should be severed from the arbitration agreements and the rest of the agreements enforced. Plaintiffs respond that the unconscionable provisions cannot be severed because of the purpose of the agreements and because the provisions cannot be removed without rewriting the agreements and indicate "a systematic effort to impose arbitration on [plaintiffs] not simply as an

14

alternative to litigation, but to secure a forum that works to [Kellermeyer's] advantage." We agree with plaintiffs.

In general, courts have discretion to sever unconscionable provisions and enforce the rest of an arbitration agreement under Civil Code section 1670.5, subdivision (a). In assessing severability, "[c]ourts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.)

Our Supreme Court in *Armendariz* concluded two factors weighed against severance. First, the agreement at issue there contained "more than one unlawful provision." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) Second, there was "no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Id.* at pp. 124–125.) Instead, the court "would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," an authority courts do not have. (*Id.* at p. 125; see also *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 184–185 [unconscionable provision could not be severed where court would have to rewrite the contract].)

"[T]he appropriate inquiry is qualitative and accounts for each factor *Armendariz* identified. At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.' [Citation omitted.] If so, the contract cannot be cured, and the court should refuse to enforce it." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 516 (*Ramirez*).) Even if a contract can be cured through severance or restriction,

15

courts "should also ask whether the unconscionability *should* be cured . . . because the interests of justice would be furthered by such actions." (*Ibid*.) "This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." (*Id.* at pp. 516–517; see *Armendariz, supra*, 24 Cal.4th at p. 124.)

Here, the two *Armendariz* factors weigh against severance. First, the arbitration agreements contain at least three substantively unconscionable provisions, which supports a finding that the agreements are "permeated by an unlawful purpose." (*Armendariz, supra*, 24 Cal.4th at p. 124; see *Carbajal v. CWPSC, Inc., supra*, 245 Cal.App.4th at p. 254 [three substantively unconscionable terms supported finding that agreement's arbitration provision was "permeated with unconscionability"].)

Second, the central purpose of the arbitration agreements is "tainted with illegality." (*Ramirez, supra*, 16 Cal.5th at p. 516.) The main purpose of the agreements is to require arbitration of all disputes between the parties and certain third party beneficiaries, regardless of whether the claims relate to plaintiffs' employment. (See *Cook, supra*, 102 Cal.App.5th at p. 329 ["The agreement's purpose is not directed only at disputes related to Cook's employment but instead requires Cook to arbitrate claims that do not relate to her employment or her employer"].) The overly broad scope and indefinite duration of the agreements and the agreements' lack of mutuality regarding third party beneficiaries are not merely collateral to this purpose. Thus, severance is not appropriate. (*O'Hare, supra*, 107 Cal.App.4th at p. 281

16

["[s]everance is permissible only if the unconscionable portion is collateral to the main purpose of the contract"].)

At oral argument, Kellermeyer's counsel argued that we can cure the unconscionability of the arbitration agreements by striking the language "including but not limited to any disputes" and "and non-employment related matters," which would limit the scope and duration of the agreements to claims that arose during plaintiffs' employment with Kellermeyer. But striking that language would effectively rewrite the agreements to exclude claims the parties agreed to arbitrate, contrary to the purpose of the agreements. Therefore, the agreements cannot be enforced. (*Ramirez*, *supra*, 16 Cal.5th at p. 516; see *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1068 [concluding arbitration agreement was unenforceable as a matter of law based on provision limiting arbitrators' powers to "second-guess" decisions of partnership]; *Ramirez v. Charter Communications, Inc.* (2025) 108 Cal.App.5th 1297, 1306 [agreement could not be enforced where striking unconscionable provision would "effectively rewrit[e] the Agreement to cover claims [the employee] did not agree to arbitrate"].)

Kellermeyer also points to the arbitration agreements' severance clause. While courts should take a severance clause into account in determining whether severance is proper, "parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause." (*Ramirez*, *supra*, 16 Cal.5th at p. 517.) Where, as here, the agreement is permeated by unconscionability, a trial court does not abuse its discretion by refusing to enforce the agreement. (See *Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1292.)

Therefore, the trial court properly determined that the arbitration agreements were unenforceable due to unconscionability.

17

## III.   DISPOSITION

The order denying Kellermeyer's motion to compel arbitration is affirmed.

_____
LANGHORNE WILSON, J.

WE CONCUR:


_____
HUMES, P. J.


_____
SMILEY, J.

*Laliberte v. Kellermeyer Bergensons Services, LLC / A172565*