Filed 5/27/21  Veitenhans v. Hikvision USA CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FOUR

|  |  |
|---|---|
| WAGILISTRIA VEITENHANS, | B302552 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV17310) |
| v. | |
| HIKVISION USA, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed.

Steven B. Stevens; Solomon, Saltsman & Jamieson and Ryan M. Kroll for Plaintiff and Respondent.

Gordon Rees Scully Mansukahni, Christopher B. Cato, Matthew G. Kleiner and Casey Shaw for Defendant and Appellant.

---

## INTRODUCTION

Appellant Hikvision USA, Inc. appeals from an order denying its motion to compel arbitration of claims brought by respondent Wagilistria Veitenhans, a former employee, alleging Hikvision discriminated against her on the basis of her gender and disability, in violation of the Fair Employment and Housing Act (FEHA). Hikvision's motion sought to enforce an arbitration provision in an employment agreement it required Veitenhans to sign when it hired her. Although the arbitration provision facially applied to all claims related to Veitenhans's employment, a contemporaneously executed confidentiality agreement established an exception for Hikvision's claims against Veitenhans for using or disclosing Hikvision's confidential information (the confidentiality carve-out).

In opposing Hikvision's motion to compel arbitration, Veitenhans argued the arbitration provision was both procedurally and substantively unconscionable, and therefore unenforceable. She identified the confidentiality carve-out as the worst of several substantively unconscionable terms, arguing the carve-out deprived the arbitration provision of mutuality, the paramount consideration in assessing the unconscionability of an

2

arbitration agreement. Veitenhans further argued that curing the arbitration provision's unconscionability by severing the carve-out (or any other term) was neither possible nor in the interests of justice. Hikvision did not argue for severance of the confidentiality carve-out. Indeed, Hikvision failed even to mention the carve-out in the trial court.

The court found the arbitration provision both substantively and procedurally unconscionable. It found significant substantive unconscionability because the confidentiality carve-out (along with another provision) deprived the arbitration provision of mutuality. It found substantial procedural unconscionability because: (1) the employment agreement was adhesive; (2) the arbitration provision's language was ambiguous; (3) Hikvision did not sign the agreement; and (4) Hikvision failed to identify or attach the rules of the American Arbitration Association (AAA), which were incorporated into the arbitration provision by reference. Finding the arbitration provision unenforceable, the court denied Hikvision's motion to compel arbitration.

On appeal, Hikvision contends: (1) the trial court erred in finding sufficient degrees of substantive and procedural unconscionability to render the arbitration provision unenforceable; and (2) even assuming there was no error in the court's unconscionability findings, the court abused its discretion in refusing to enforce the arbitration provision,

rather than severing the confidentiality carve-out and enforcing the remainder of the provision.

We affirm. Reviewing the trial court's unconscionability findings de novo, as there is no material dispute in the evidence, we find a high degree of substantive unconscionability and a moderate degree of procedural unconscionability. A high degree of substantive unconscionability is established by: (1) the confidentiality carve-out, which deprived the arbitration provision of the paramount concern of mutuality; and (2) the provision's incorporation of AAA rules that, at the time the provision was executed, subjected Veitenhans to a risk of bearing costs forbidden by *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*).[1] A moderate degree of procedural unconscionability is established by: (1) the employment agreement's adhesive nature; (2) Hikvision's failure to identify or attach the substantively unconscionable AAA cost-splitting rules; and (3) Hikvision's drafting of the employment and confidentiality agreements in a manner that obscured the arbitration provision's lack of mutuality. In light of these

---

[1]     Under *Armendariz*, when an employer imposes mandatory arbitration as a condition of employment, and the arbitration agreement applies to FEHA claims (or other unwaivable statutory claims), the agreement "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, *supra*, 24 Cal.4th at 110-111.)

4

unconscionability findings, we conclude the trial court did not err in finding the arbitration provision sufficiently unconscionable to render it unenforceable. Finally, we conclude Hikvision forfeited its argument for severance of the confidentiality carve-out by failing even to mention the carve-out, let alone argue for its severance, in the trial court.

## FACTUAL BACKGROUND

### A. *The Employment and Confidentiality Agreements*

In May 2013, Veitenhans applied for a regional sales manager position with Hikvision, a multi-national surveillance camera manufacturer and retailer. Veitenhans's written application and resume indicated she had obtained a bachelor's degree and a paralegal certificate, and had worked in sales for more than a decade. Later that month, Hikvision sent Veitenhans a letter offering her the position. The offer letter informed Veitenhans that in order to accept the job, she was required to execute, inter alia, an employment agreement and a confidentiality agreement.

On June 1, 2013, Veitenhans signed the employment agreement and the confidentiality agreement (along with other employment documents) and began working for Hikvision. Hikvision did not sign either agreement. The agreements were drafted on preprinted forms and typically referred to Veitenhans in generic terms (e.g., "Employee," "he or she," and "his or her").

The employment agreement was three pages long and included 18 numbered paragraphs. Paragraph 14 of the employment agreement -- titled, in boldface, "Settlement by Arbitration" -- provided, "Any claim or controversy that arises out of or relates to this agreement, or the breach of it, shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Judgment upon the award rendered may be entered in any court with jurisdiction." No AAA rules were identified within or attached to the agreement. The agreement did not explain that Veitenhans's agreement to submit claims to arbitration constituted a waiver of her right to bring those claims in court. Nor did the employment agreement reference the separate confidentiality agreement.

The confidentiality agreement included 10 numbered paragraphs, without headings. It provided that Veitenhans had and would come into possession of "confidential information belonging to the Employer[,] including but not limited to trade secrets . . . ." Veitenhans promised not to disclose "such confidential information" to third parties, or to use it for her own or third parties' benefit. Paragraph four provided, "Violation of this agreement by the Employee will entitle the Employer to an injunction . . . and will entitle the Employer to other legal remedies, including attorney's fees and costs. Employee agrees that in the event of any breach or threatened breach by Employee, Employer may obtain, in addition to any other legal remedies which may be available, such equitable relief as may be necessary to protect

Employer against any such breach or threatened breach." Paragraph five provided, "This Agreement shall be governed and construed in accordance with the laws of the United States and the State of California and Employee consents to the exclusive jurisdiction of the state courts and U.S. federal courts located there for any dispute arising out of this Agreement." As the parties agree on appeal, the second portion of paragraph five -- investing the courts with "exclusive" jurisdiction over disputes arising under the agreement, which protected only Hikvision's confidential information -- established the confidentiality carve-out, exempting Hikvision's confidentiality claims against Veitenhans from the employment agreement's arbitration provision. (See Civ. Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"].) The confidentiality agreement made no reference to the employment agreement or to arbitration.

### B. *Veitenhans's FEHA Action*

In January 2019, Hikvision terminated Veitenhans's employment. In May 2019, Veitenhans sued Hikvision. Veitenhans alleged there was a "blatant and widespread culture of misogyny" at Hikvision. A Hikvision executive overseeing her sales group remarked, in her presence and that of a colleague and future supervisor, that her gender was "'a punishment for being evil in a past life.'" The same executive hypothesized that Veitenhans might develop

7

ovarian cancer as a divine punishment for having engaged in premarital sex. Coworkers spread rumors that Veitenhans had sex with clients, and that this was the sole reason for her success. While training new hires, a Hikvision employee stated that Veitenhans knew nothing, and did not need to know anything, because she was a "'girl.'" Her superiors treated her less favorably than male coworkers in performance evaluations, responses to reimbursement requests, and pay.

Veitenhans further alleged that Hikvision discriminated against her on the basis of her July 2018 diagnosis of trochanteric pain disorder, which temporarily impacted her ability to perform one of her duties, viz., driving long distances without a break on visits to customers and prospective clients. Between August and December 2018, Veitenhans provided Hikvision with a series of physician letters, each of which identified this temporary limitation. The last of these physician letters stated Veitenhans would be able to perform her duties *without* limitation on February 8, 2019. Four weeks before that date (on January 11, 2019), Hikvision terminated her. Hikvision's termination letter stated, inter alia, "'Hikvision cannot continue to accommodate [your] limitation indefinitely and accordingly cannot maintain your position with the Company.'"

Veitenhans's complaint included the following FEHA causes of action: (1) wrongful termination on the basis of gender, disability, and/or medical condition; (2) sexual

8

harassment; (3) gender discrimination; (4) failure to reasonably accommodate a disability; (5) failure to engage in an interactive process regarding Veitenhans's request for accommodation; and (6) failure to provide medical leave. The complaint also included non-FEHA causes of action for breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. Veitenhans sought, inter alia, damages in an amount no less than $5 million.

### C. *Hikvision's Motion to Compel Arbitration*
#### 1. *Motion*

In July 2019, Hikvision filed a motion to compel arbitration of Veitenhans's claims pursuant to the employment agreement's arbitration provision. Anticipating Veitenhans's unconscionability defense, Hikvision argued the arbitration provision was neither substantively nor procedurally unconscionable. Hikvision argued the arbitration provision was fully mutual because it "state[d] that 'any claim or controversy' is subject to arbitration." While arguing generally that any term found unconscionable should be severed, Hikvision neither identified any provision that could be severed nor mentioned the confidentiality carve-out.

Hikvision submitted a declaration executed by Hui Yang, the vice president of its human resources and legal departments. Yang declared Hikvision intended to pay all costs unique to arbitration (i.e., costs that would not be

9

incurred in litigation). Although Yang declared she had personal knowledge of Veitenhans's employment documents and the processes for maintaining them, she did not claim to have personal knowledge of the documents' execution, nor even to have been employed by Hikvision at the time Veitenhans was hired. She nevertheless declared, "Plaintiff was afforded ample time and opportunity to review the Employment Agreement prior to signing it. Had Plaintiff wanted a third party to review it, or [to] discuss the arbitration provision therein with [Hikvision], we would have accommodated her. At no time did [Hikvision] force Plaintiff to sign the Employment Agreement, and at no time did we inform Plaintiff that she would not be hired if she did not agree to the arbitration clause in the Employment Agreement. Moreover, Plaintiff did not ask us to discuss the arbitration clause, or any other term in the agreements[,] before she executed them." Veitenhans subsequently objected to Yang's account of the execution of the employment agreement on various grounds, including lack of personal knowledge.

### 2. *Opposition*

Veitenhans opposed Hikvision's motion to compel arbitration. She contended the parties had not executed a valid arbitration agreement because she had never signed the employment agreement (her purported signature on the agreement was not genuine), and because Hikvision's failure to identify or attach the applicable AAA rules precluded a

meeting of the minds.  In the alternative, she contended that the arbitration provision was both procedurally and substantively unconscionable, and that the court should therefore refuse to enforce it (rather than merely sever specific terms).

In contending that the arbitration provision was substantively unconscionable, Veitenhans argued that "[w]orst of all," the confidentiality carve-out deprived the arbitration provision of mutuality.  She cited several cases finding arbitration agreements unconscionable in light of similar confidentiality carve-outs.  Veitenhans further argued that the provision was substantively unconscionable in incorporating the AAA rules in effect at the time the provision was executed (the 2010 AAA rules).  She argued the 2010 rules were unconscionable because, inter alia, they imposed a risk that Veitenhans would bear costs "impermissible under *Armendariz*."  Specifically, the 2010 rules provided that if the AAA determined, from a review of documents provided by the parties, that a dispute submitted for arbitration arose from an "individually-negotiated agreement" rather than an "employer-promulgated plan," the employee would be required to pay half of many arbitration costs, including a "proceed fee" required to proceed beyond the initial opening of the arbitration.  For a claim in the amount of $5 to 10 million (such as Veitenhans's claim for at least $5 million), the proceed fee was $9,000.  In response to Yang's declaration that Hikvision intended to pay all unique costs of arbitration, Veitenhans argued

11

Hikvision was "attempt[ing] to paper-over unconscionable provisions after the fact" in a manner that courts consistently had rejected.

Veitenhans contended the arbitration provision was also procedurally unconscionable because, inter alia, Hikvision imposed the provision in a contract of adhesion, and Hikvision neither identified nor attached the AAA rules incorporated into the provision by reference. In support of these arguments, Veitenhans submitted a declaration in which she described: (1) personal hardships she had experienced shortly before Hikvision hired her, which had left her willing to accept any employment terms in order to obtain additional income; and (2) her execution of employment documents at Hikvision's offices on her first day of work (June 1, 2013). Veitenhans did not recall which documents she executed, and did not believe she signed the employment agreement. She did not recall interacting with Yang (Hikvision's declarant), and instead recalled interacting with human resources manager Katherine Chang. Chang did not indicate that Hikvision was willing to negotiate the terms of Veitenhans's employment. Nor did Chang discuss the AAA rules incorporated by reference into the employment agreement, provide a copy of the rules, or inform her where she could review the rules.

Finally, Veitenhans argued the court should declare the arbitration provision unenforceable in its entirety, rather than merely sever specific terms. She argued curing the provision's unconscionability through severance was both:

12

(1) beyond the court's power, as the lack of mutuality established by the confidentiality carve-out could not be cured without adding new clauses; and (2) not in the interests of justice, as Hikvision's insertion of multiple unconscionable terms (including the confidentiality carve-out and the incorporation of the AAA's cost-splitting rules), along with other factors, indicated Hikvision had made a "systematic effort" to gain unfair advantages.

### 3. *Reply*

In its reply brief, Hikvision again failed to mention the confidentiality carve-out. Hikvision argued the arbitration provision was fully mutual because its language was mutual on its face. Hikvision further argued the cost-splitting provisions of the 2010 AAA rules were irrelevant because: (1) Hikvision intended to pay all unique costs of arbitration; and (2) had Veitenhans submitted her claims for arbitration in 2019 instead of bringing her FEHA action, the AAA rules would have applied as amended in 2017, and would have required Hikvision to bear most or all costs.[2] Hikvision asked the court to enforce the arbitration provision, without asking the court (even in the alternative) to sever any term.

---

[2]    The 2010 rules provided that a dispute would be governed by the rules in effect when the dispute was submitted for arbitration. Under the 2017 amendments, the rules provided that the costs of an employment dispute generally would be paid by the employer.

13

## 4. *Ruling*

On September 10, 2019, the trial court provided the parties' counsel with a tentative ruling denying Hikvision's motion to compel arbitration, and held a hearing on the motion in chambers. The record does not include a reporter's transcript or settled statement concerning the hearing. At the conclusion of the hearing, the court adopted its tentative ruling. Although the court found that Veitenhans had signed the employment agreement, it found the arbitration provision unconscionable and therefore unenforceable.

The court found a "significant" degree of substantive unconscionability "due to the non-mutuality of the arbitration clause."[3] The court found the arbitration provision lacked mutuality for two reasons. First, through the confidentiality carve-out, Hikvision "attempted to circumvent its arbitration obligation" and "preserve the right to litigate [its confidentiality claims] in courts rather than in arbitration." Second, the court found Hikvision's entitlement to an injunction against actual or threatened violations of Veitenhans's confidentiality obligations allowed Hikvision to avail itself of judicial remedies unavailable to

---

[3] The court found no source of substantive unconscionability other than the lack of mutuality. It found the asserted unconscionability of the AAA's cost-splitting rules moot, in light of Yang's declaration that Hikvision intended to pay the unique costs of arbitration.

14

Veitenhans, expressing a belief that injunctive relief is ordinarily unavailable in arbitration.[4]

The court found a "substantial" degree of procedural unconscionability "arising from the ambiguous, and misleadingly drafted, employment adhesion contract." The court found the employment agreement adhesive because it was presented on a take-it-or-leave-it basis. The court sustained Veitenhans's objections to Yang's contrary account of the execution of the employment agreement, on the ground that Yang, who did not claim to have been present during its execution or even employed by Hikvision at the time, lacked personal knowledge. The court further found that the arbitration provision's language created uncertainty, reasoning that: (1) the provision's references to "settlement" by arbitration misleadingly conflated the trial and arbitration processes; and (2) the provision's reference to disputes arising out of or relating to "'this agreement'" was ambiguous, potentially referring to the formation of the employment agreement or instead to the employment relationship it created. Finally, relying on *Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th 1, the court found that Hikvision's failure to identify or attach the AAA rules incorporated into the provision by reference, along with

---

[4]    In fact, injunctive relief is generally available in arbitration. (See *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 277-278 (*O'Hare*) [parties to arbitration may obtain provisional and permanent injunctive relief "both prior to and at the conclusion of arbitration"].)

15

Hikvision's failure to sign the employment agreement, contributed to the degree of procedural unconscionability.[5]

The court concluded the arbitration provision was unenforceable in light of the significant degree of substantive unconscionability and substantial degree of procedural unconscionability it had found. The court therefore denied Hikvision's motion to enforce the arbitration provision.

Hikvision timely appealed.

## DISCUSSION

Hikvision contends: (1) the trial court erred in finding sufficient degrees of substantive and procedural unconscionability to render the arbitration provision unenforceable; and (2) even assuming there was no error in the court's unconscionability findings, the court abused its discretion in refusing to enforce the arbitration provision, rather than severing the confidentiality carve-out and enforcing the remainder of the provision.

"If the court as a matter of law finds [a] contract or any clause of the contract to have been unconscionable at the time it was made[,] the court may refuse to enforce the

---

[5] We note that the *Flores* court expressly declined to analyze unconscionability. (*Flores v. Nature's Best Distribution, LLC*, *supra*, 7 Cal.App.5th at 11.) Veitenhans did not argue below, and does not argue on appeal, that Hikvision's failure to sign the employment agreement established any degree of procedural unconscionability.

16

contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) Both substantive unconscionability (the unfairness of the contract's terms) and procedural unconscionability (the unfair fashion in which the contract was imposed) must be shown -- but a high showing of one may compensate for a relatively low showing of the other. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125-126 (*OTO*).) Where, as here, there is no meaningful conflict in the evidence, we review de novo a trial court's unconscionability findings. (See *id.* at 126; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 906 (*Davis*).)

### A. *Substantive Unconscionability*

Hikvision contends the trial court erred in finding a significant degree of substantive unconscionability in the arbitration provision's lack of mutuality. We disagree, as the confidentiality carve-out deprived the provision of the paramount concern of mutuality. We find additional substantive unconscionability in the provision's incorporation of AAA rules that, at the time the provision was executed, subjected Veitenhans to a risk of bearing costs forbidden by *Armendariz, supra*, 24 Cal.4th 83. We find the lack of mutuality and the risk of forbidden costs, together, established a high degree of substantive unconscionability.

17

### 1. *Mutuality*

The trial court properly found a significant degree of substantive unconscionability in the arbitration provision's lack of mutuality. "In assessing substantive unconscionability [in an arbitration agreement], the 'paramount consideration' is *mutuality* of the obligation to arbitrate." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2020) ¶ 5:150.5m; accord, *Davis, supra*, 53 Cal.App.5th at 914.) Thus, "an arbitration agreement is substantively unconscionable where it compels arbitration of claims employees are most likely to bring against the employer (e.g., contract, tort or discrimination claims, etc.), and exempts from arbitration claims the employer is most likely to bring against its employees (e.g., injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or unauthorized disclosure of trade secrets or confidential information)." (Knight et al., *supra,* Cal. Practice Guide: Alternative Dispute Resolution, ¶ 5:155.2a, italics omitted.) Indeed, courts consistently have found substantive unconscionability where an employer drafts an otherwise mutual arbitration provision subject to a unilateral carve-out for the employer's confidentiality claims. (See, e.g., *Davis, supra*, 53 Cal.App.5th at 915-917 [arbitration provision was non-mutual and therefore substantively unconscionable, where provision's sole carve-out applied only to disputes arising from confidentiality agreement that "only obligate[d] . . . employees to protect the company's

18

confidential and proprietary information, not vice versa"];
*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th
638, 664-666 (*Abramson*) [same, where arbitration
provision's sole carve-out applied only to claims that
employee breached covenants protecting employer's
confidential information]).

An employer advantaged under a non-mutual
arbitration agreement may defeat a finding of substantive
unconscionability by showing a "reasonable justification" for
its advantage, but "'the "business realities" that create the
special need for such an advantage [must be] explained in
the contract itself . . . [or] factually established.'"
(*Armendariz*, *supra*, 24 Cal.4th at 117-118.) A "reasonable"
justification for an arbitration agreement's non-mutuality
must be "grounded in something other than the employer's
desire to maximize its advantage based on the perceived
superiority of the judicial forum." (*Id.* at 120.) As we have
recognized, "'[t]he unilateral right to litigate rather than
arbitrate claims . . . cannot be justified by the need for
provisional remedies,'" as parties to an arbitration
agreement may apply to a court for provisional remedies
(including temporary restraining orders and preliminary
injunctions) under Code of Civil Procedure section 1281.8.
(*O'Hare*, *supra*, 107 Cal.App.4th at 277-278.)

Here, as the trial court found, the arbitration provision
was substantively unconscionable, as the unilateral carve-
out for Hikvision's confidentiality claims against Veitenhans
deprived the provision of mutuality. (See *Davis*, *supra*, 53

19

Cal.App.5th at 915-917; *Abramson, supra*, 115 Cal.App.4th at 664-666; *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1272-1273 (*Farrar*).) Hikvision proffered no justification for the carve-out below. On appeal, although Hikvision asserts a need to protect its confidential information, it makes little effort to explain its purported need to do so by bringing claims *in court*, merely arguing that "arbitration cannot offer the immediate relief the court system offers through a preliminary injunction or temporary restraining order." In other words, Hikvision relies on the "need for provisional remedies" that this court has rejected as a justification for a "unilateral right to litigate rather than arbitrate claims," in light of the availability of provisional remedies under Code of Civil Procedure section 1281.8. (*O'Hare, supra*, 107 Cal.App.4th at 277-278.) In any event, a need for *provisional* remedies cannot justify Hikvision's unilateral right under the confidentiality agreement to sue in court for additional remedies, including both permanent injunctive relief and damages. (See *id.* at 278 [employer's asserted need for provisional remedies did not justify its unilateral right under arbitration agreement to sue in court for injunctive relief and "'any other equitable relief that may be appropriate'"].)

*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237 (*Baltazar*), the principal authority on which Hikvision relies, is distinguishable. There, our Supreme Court found no substantive unconscionability in: (1) an arbitration agreement's provision allowing both parties to seek a

temporary restraining order or preliminary injunction in court, which "simply . . . confirm[ed] the parties' ability to invoke undisputed statutory rights" under Code of Civil Procedure section 1281.8; and (2) a provision protecting the employer's confidential information *within* arbitration, which was reasonably justified by the employer's undisputed need to protect its confidential information, and which did not preclude the employee from seeking "comparable protection" within the arbitration proceedings. (*Baltazar* at 1246-1250.) Here, as noted, the confidentiality carve-out went well beyond confirming Hikvision's statutory right to seek provisional remedies in court, as it also allowed Hikvision to seek permanent injunctive relief and damages. Moreover, the carve-out did not protect Hikvision's confidential information within arbitration, but instead allowed Hikvision to *forego* arbitration -- while the employment agreement precluded Veitenhans from doing the same. The trial court did not err in finding this lack of mutuality, which Hikvision failed to reasonably justify, established a significant degree of substantive unconscionability.

### 2. *Costs*

We find additional substantive unconscionability in the arbitration provision's incorporation of AAA rules that, at the time the provision was executed, subjected Veitenhans to a risk of bearing forbidden costs. "[I]n the context of mandatory employment arbitration agreements that apply to

21

unwaivable statutory claims -- such as FEHA claims -- our Supreme Court has held [in *Armendariz, supra,* 24 Cal.4th 83] that regardless of an employee's income, an employer must pay all costs unique to arbitration, including arbitrator fees." (*Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 221 (*Penilla*).) Thus, as we have recognized, an arbitration agreement is substantively unconscionable if it incorporates rules that require FEHA plaintiffs to pay unique costs of arbitration. (*Penilla, supra,* at 221 ["respondents asserted two FEHA claims -- racial discrimination and sexual harassment in housing. Nevertheless, the instant arbitration provision does not exempt respondents bringing those claims from the unique costs of arbitration. This fact further supports a finding of substantive unconscionability"]; see also *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 557-558 (*Ali*) [employer's arbitration agreement was substantively unconscionable in requiring wage-and-hour plaintiffs to bear half of arbitration costs, in violation of *Armendariz*].) Indeed, the *risk* of imposition of costs forbidden by *Armendariz* is sufficient to establish substantive unconscionability. (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248-1249 (*Wherry*) [finding substantive unconscionability in terms "providing the arbitrator may impose costs, including the arbitration fee, on the losing party," exposing FEHA plaintiffs to risk of bearing costs forbidden by *Armendariz*].)

Here, examining the arbitration provision, as we must, "at the time it was made" in June 2013 (Civil Code, § 1670.5,

22

subd. (a)), we find it was substantively unconscionable in incorporating AAA rules that then subjected Veitenhans to a risk of bearing costs forbidden by *Armendariz.* Under the 2010 AAA rules then in effect, had Veitenhans submitted her FEHA claims for arbitration, the AAA could have required Veitenhans to pay half of many costs the parties would not have incurred in court, including a potential $9,000 fee to proceed beyond the initial opening of arbitration. *Armendariz* forbade imposition of such costs. (See *Penilla, supra,* 3 Cal.App.5th at 221.) Although the AAA might not have charged Veitenhans these costs had it found her dispute with Hikvision arose from an "employer-promulgated plan," Hikvision does not argue the AAA would have made such a finding. In any event, a layperson such as Veitenhans could not have predicted with confidence whether the AAA would make such a finding. Thus, the cost-splitting rules might have discouraged Veitenhans from asserting her FEHA rights, and were therefore substantively unconscionable. (See *Wherry, supra,* 192 Cal.App.4th at 1248-1249; cf. *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 636 (*Carlson*) [employer's after-the-fact offer to pay costs did not cure cost-splitting provisions' substantive unconscionability, as "the risk that a claimant may bear substantial costs of arbitration, not just the actual imposition of those costs, may discourage an employee from exercising the right to pursue any remedy against the employer"].)

Contrary to Hikvision's contentions, the substantive unconscionability established by this risk of forbidden costs was not negated by: (1) Yang's declaration that Hikvision intended to pay the costs; or (2) the 2017 amendments to the AAA rules, under which Hikvision would have borne most or all costs. First, Hikvision's after-the-fact offer to cover arbitration costs could not retroactively negate the arbitration provision's substantive unconscionability at the time it was executed. (See *Carlson*, *supra*, 239 Cal.App.4th at 636-637; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 115-117 [arbitration agreement's cost-splitting provision was substantively unconscionable for violating *Armendariz*, "notwithstanding [employer's] belated willingness to excise that portion of the agreement," as "the mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect"]; *O'Hare*, *supra*, 107 Cal.App.4th at 280 ["[The employer's] willingness to bear all costs in the arbitration proceeding does not change the fact the arbitration provision [imposing costs forbidden by *Armendariz*] is substantively unconscionable"].) Similarly, Hikvision's reliance on the 2017 amendments is "nothing more than an attempt to make an end run around the legislative direction to evaluate the contract based upon its terms at the time of execution." (*O'Hare*, *supra*, at 281 [addressing employer's reliance on AAA discovery rules that went into effect after execution of arbitration agreement].) The arbitration provision was executed in 2013, years before the 2017 amendments.

24

Although the 2010 rules provided notice that superseding amendments, if any, would be applied, the parties could not have known in 2013 that the rules would be amended years later to allow Veitenhans to submit her FEHA claims for arbitration without fear of substantial costs.  Hikvision "cites no authority for the proposition it should be relieved of the effect of an unlawful provision it inserted in the arbitration provision because of the serendipity that the AAA rules changed since the employment contract was executed."  (*O'Hare*, *supra*, at 281-282.)  We conclude the arbitration provision was substantively unconscionable at the time it was made in incorporating the unconscionable AAA cost-splitting rules then in effect.

In sum, we find a high degree of substantive unconscionability, established by:  (1) the confidentiality carve-out, which deprived the arbitration provision of the paramount concern of mutuality; and (2)  the arbitration provision's incorporation of AAA rules that, at the time the provision was executed, subjected Veitenhans to a risk of bearing costs forbidden by *Armendariz*.  (See *Davis*, *supra*, 53 Cal.App.5th at 917 [finding high degree of substantive unconscionability in non-mutuality established by employer's confidentiality carve-out, in combination with limitations on arbitral discovery]; *Swain v. Laser Away Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 73-74 (*Swain*) [separately finding high degrees of substantive unconscionability in skilled nursing facility's carve-out for collections and evictions claims, and in its requirement that

25

patient pay unaffordable arbitration costs].) We further find this high degree of substantive unconscionability, combined with the moderate degree of procedural unconscionability found below, supports the trial court's conclusion that the arbitration provision was unenforceable. (See *Davis*, *supra*, at 917; *Swain*, *supra*, at 75.) We therefore need not address the additional grounds for a finding of substantive unconscionability identified by the trial court in its ruling and by Veitenhans on appeal.

### B. *Procedural Unconscionability*

The trial court found a substantial degree of procedural unconscionability, established by the employment agreement's adhesive nature, contractual language the court found ambiguous, Hikvision's failure to sign the agreement, and Hikvision's failure to identify or attach the AAA rules incorporated into the arbitration provision by reference. Hikvision contends the court erred in relying on these factors. We disagree in part, finding the court properly relied on the employment agreement's adhesive nature and on Hikvision's failure to identify or attach the substantively unconscionable AAA cost-splitting rules. We find an additional degree of procedural unconscionability in Hikvision's drafting of the employment and confidentiality agreements in a manner that obscured the arbitration provision's lack of mutuality. Considering these factors together, we find a moderate degree of procedural unconscionability.

26

### 1. *Adhesion and Oppression*

An adhesive contract is standardized (generally on a preprinted form) and offered by the party with superior bargaining power on a take-it-or-leave-it basis. (*OTO*, *supra*, 8 Cal.5th at 126.) "Arbitration contracts imposed as a condition of employment are typically adhesive . . . ." (*Ibid.*) A finding of adhesion is "sufficient to establish some degree of procedural unconscionability." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915.)

A higher degree of procedural unconscionability may be established through an additional showing of oppression. (See *OTO*, *supra*, 8 Cal.5th at 126.) "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*Id.* at 126-127.) With respect to the pressure-to-sign factor, courts considering preemployment arbitration agreements must keep in mind that "'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'" (*Id.* at 127.)

Here, the employment agreement satisfied each element of a contract of adhesion. (See *OTO*, *supra*, 8 Cal.5th at 126.) First, the agreement was standardized; it was drafted on a preprinted form that typically referred to Veitenhans in generic terms, indicating Hikvision presented the agreement in identical form to other prospective employees. Second, the agreement was offered by the party with superior bargaining power; Hikvision, by its own admission, was a multi-national company, while Veitenhans was an individual prospective employee (and no evidence suggested she was among the "most sought-after" employees). (*OTO*, *supra*, at 127.) Finally, Hikvision offered the agreement on a take-it-or-leave-it basis; its offer letter stated that Veitenhans would be required to sign the employment agreement, and Veitenhans declared that Hikvision gave no indication through its agent that it was willing to negotiate the terms of her employment.[6] Thus, as the trial court found, the arbitration provision was imposed within "a 'take-it-or-leave-it' adhesion contract," establishing "a degree of procedural unconscionability."

---

[6] Contrary to Hikvision's contention, the trial court acted within its discretion in sustaining Veitenhans's objections to Hui Yang's contrary account of the execution of the employment agreement, on the ground of lack of personal knowledge. (See Evid. Code, § 702, subd. (a).) Yang claimed personal knowledge only of the documents in Veitenhans's personnel file and related document retention processes, not the documents' execution. As Hikvision acknowledges, Yang did not even claim to have been employed by Hikvision when Veitenhans was hired.

However, we find no appreciable degree of oppression beyond that inherent in an adhesive employment agreement. Veitenhans produced no evidence that she was given only a short period of time in which to review and sign the employment agreement (or other employment documents), or precluded from consulting an attorney. (See *OTO*, *supra*, 8 Cal.5th at 126-127.) She declared she had no recollection of signing the employment agreement, leaving the precise circumstances of its execution a mystery. Further, neither the employment agreement nor the arbitration provision was long or complex.[7] (See *id.* at 127.) There was no evidence Veitenhans lacked relevant education and experience; her employment application and resume indicated she had obtained a bachelor's degree and a paralegal certificate, and had worked in sales for more than a decade. (See *ibid.*) Finally, although Veitenhans claimed she was desperate for employment on account of personal hardships, there was no evidence that her hardships contributed to the degree of

---

[7] Unlike the trial court, we do not find the language of the arbitration provision ambiguous. The provision's references to "settlement" by arbitration were readily understandable as referring to *resolution* by arbitration. Further, by stating that it applied to disputes arising out of or relating to the employment agreement or the breach thereof, the provision unambiguously communicated Hikvision's intent to require arbitration of disputes related both to the formation of the agreement and the employment relationship created by it.

29

pressure "exerted on" her by Hikvision, which was presumably unaware of them.[8]  (*Ibid.*)

In sum, although Hikvision exerted economic pressure on Veitenhans as her prospective employer, imposing the arbitration provision within a contract of adhesion, "[t]his [pressure] alone is a fairly low level of procedural unconscionability."  (*Alvarez v. Altamed Health Services Corporation* (2021) 60 Cal.App.5th 572, 591; accord, *Davis, supra*, 53 Cal.App.5th at 907, 910.)

### 2. *Surprise*

A showing of surprise may establish a higher degree of procedural unconscionability than that inherent in a

---

[8]  We reject Hikvision's argument that Veitenhans's personal hardships lowered her reasonable expectations concerning her employment, rendering the arbitration provision enforceable under *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807. Hikvision cites *Graham* for the proposition that "[a]n adhesive arbitration agreement will be enforced if its terms fall within the reasonable expectations of the weaker party."  But in *Graham*, our Supreme Court articulated and applied a contrary proposition:  "a contract or provision, *even if* consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.'"  (*Id.* at 820, italics added.)  The court held an arbitration agreement unconscionable and unenforceable despite finding that the agreement fell within the weaker party's reasonable expectations.  (*Id.* at 821, 826-828.)  We are unaware of any authority supporting Hikvision's implicit position that the unconscionability doctrine condones an employer's exploitation of a job-seeker if the job-seeker is sufficiently desperate.

contract of adhesion.  (See *OTO*, *supra*, 8 Cal.5th at 126.)
Surprise may be found where substantively unconscionable
terms were "'artfully hidden' by the simple expedient of
incorporating them by reference rather than including them
in or attaching them to the arbitration agreement."
(*Baltazar*, *supra*, 62 Cal.4th at 1246; see also *Davis*, *supra*,
53 Cal.App.5th at 909.)  Additionally, surprise may be found
where "the agreement appears to have been drafted with an
aim to thwart, rather than promote, understanding,"
undermining the nondrafting party's informed consent.
(*OTO*, at 129.)  An agreement may thwart understanding by
hiding the challenged provision in a prolix printed form, or
by using language -- for example, complex sentences filled
with legal jargon -- rendering the substance of the
challenged provision opaque.  (See *id.* at 128.)

Here, we find two sources of surprise.  The first is
Hikvision's incorporation into the arbitration provision of
AAA rules that then subjected Veitenhans to a risk of
bearing costs forbidden by *Armendariz*, without identifying
these rules or providing Veitenhans a copy.  As explained
above, these cost-splitting rules were substantively
unconscionable.  Thus, it was procedurally unconscionable
for Hikvision to "artfully hid[e]" the cost-splitting rules "by
the simple expedient of incorporating them by reference
rather than including them in or attaching them to the
arbitration agreement."  (*Baltazar*, *supra*, 62 Cal.4th at
1246; see also *Ali, supra*, 59 Cal.App.5th at 467, 477 [finding
"an element of surprise" in arbitration agreement's

31

incorporation of AAA rules "neither articulated in nor attached to the arbitration provision," including substantively unconscionable rule requiring plaintiff to bear costs forbidden by *Armendariz*]; cf. *OTO*, *supra*, 8 Cal.5th at 129 [finding surprise in part because employer's obligation under *Armendariz* to pay arbitration-related costs "would not be evident to anyone without legal knowledge or access to the relevant authorities," despite arbitration agreement's incorporation of *Armendariz* by reference to controlling caselaw].)

We find a second source of surprise in Hikvision's drafting of the employment and confidentiality agreements in a manner that obscured the arbitration provision's lack of mutuality. In light of the seemingly straightforward language of the arbitration provision, which was mutual on its face, Veitenhans reasonably could have been surprised to discover that the provision did not apply to Hikvision's confidentiality claims against her. Had Hikvision intended to ensure that Veitenhans (and other prospective employees presumably required to sign the same standardized agreement) understood the scope of the arbitration provision, Hikvision could have articulated the confidentiality carve-out within the provision itself, or in an adjacent provision. Instead, Hikvision inserted the carve-out into the separate confidentiality agreement. The two agreements made no reference to each other. Even within the confidentiality agreement, the carve-out was inconspicuous, located in a paragraph that began by

addressing a different topic (choice of law) and lacked a heading. Finally, the carve-out neither referenced the arbitration provision nor used the word "arbitration," instead referring to the exclusive jurisdiction of the courts. Hikvision could not reasonably have expected a layperson such as Veitenhans to recognize that the courts' exclusive jurisdiction would preclude arbitration, particularly given the arbitration provision's failure to explain that it constituted a waiver of Veitenhans's right to bring claims in court. For these reasons, the employment and confidentiality agreements "appear[] to have been drafted with an aim to thwart, rather than promote, understanding" of the non-mutual scope of the arbitration provision. (*OTO*, *supra*, 8 Cal.5th at 129.)

In sum, we find a moderate degree of procedural unconscionability, established by (1) the employment agreement's adhesive nature; (2) Hikvision's failure to identify or attach the AAA rules that, at the time the agreement was executed, subjected Veitenhans to a risk of bearing costs forbidden by *Armendariz*; and (3) Hikvision's drafting of the employment and confidentiality agreements in a manner that obscured the arbitration provision's lack of mutuality. We further find this moderate degree of procedural unconscionability, combined with the high degree of substantive unconscionability found above, supports the trial court's conclusion that the arbitration provision was unenforceable. (See *Davis*, *supra*, 53 Cal.App.5th at 917 ["minimal" procedural unconscionability established by

33

adhesion was sufficient to render arbitration agreement unenforceable, where high degree of substantive unconscionability was established by employer's confidentiality carve-out and restrictions on arbitral discovery]; *Swain, supra,* 57 Cal.App.5th at 68, 71, 75 [same, where high degree of substantive unconscionability was established by skilled nursing facility's carve-out for collections and evictions claims and requirement that patient pay unaffordable arbitration costs].)

### C. *Severance*

If a court finds a clause within a contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or instead sever the unconscionable clause and enforce the remainder of the contract. (Civ. Code, § 1670.5, subd. (a).) "The decision [whether] to sever rests in the trial court's discretion and is reviewed for abuse of discretion." (*Davis, supra,* 53 Cal.App.5th at 917.)

To the extent Hikvision suggests the trial court abused its discretion in refusing to enforce the arbitration provision, rather than merely severing the confidentiality carve-out, that argument is forfeited. As Hikvision appropriately concedes in its opening appellate brief, it failed to argue for severance of the confidentiality carve-out in the trial court. Although Hikvision attempts to reverse course in its appellate reply brief, claiming its concession was mistaken,

34

that claim is disingenuous.[9] While Hikvision's initial motion brief made a general request for severance of any term the court might find unconscionable, this request did not constitute an argument for severance of the confidentiality carve-out, which Hikvision did not even mention. Moreover, despite Veitenhans's identification of the carve-out as the arbitration agreement's "[w]orst" substantively unconscionable term, and her argument that curing the unconscionability through severance was neither possible nor in the interests of justice, Hikvision's reply brief mentioned neither severance nor the carve-out. Having failed to ask the court to exercise its discretion by severing the carve-out, Hikvision has forfeited any argument that the court abused its discretion by failing to do so. (See *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1149 [employer forfeited contention that trial court erred by failing to sever unconscionable terms, including non-mutual confidentiality carve-out, by failing to ask trial court to exercise its discretion to do so]; *Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 322 [following *Samaniego*, where skilled nursing facility failed to ask trial court to sever non-mutual carve-out for collections and evictions claims].)

Hikvision asks us to overlook its failure to raise its severance argument below, arguing that "under de novo

---

[9] We deny Veitenhans's motion to strike the portion of Hikvision's appellate reply brief addressing severance.

35

review," we may consider the severance issue in the first instance as a "question of law applied to undisputed facts." But severance is a question for the trial court's discretion. (*Davis*, *supra*, 53 Cal.App.5th at 917; see also *Samaniego v. Empire Today LLC*, *supra*, 205 Cal.App.4th at 1149 [rejecting appellant's argument that severance was question of law and therefore reviewable despite forfeiture].) In any event, even assuming, arguendo, that Hikvision's belated severance request presents an issue of law, we decline to exercise our discretion to review it. (See *Farrar*, *supra*, 9 Cal.App.5th at 1275, fn. 3 ["Merely because an issue is one of law, does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion"].) Hikvision had ample reason and opportunity to address the confidentiality carve-out in the trial court. We decline to reach the merits of Hikvision's belated request for severance of the provision.

## DISPOSITION

The trial court's order denying Hikvision's motion to compel arbitration is affirmed. Veitenhans is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.