Filed 10/21/24  Yeganeh v. AmeriSave Mortgage Corp. CA4/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| SHAHROKH YEGANEH, | |
| Plaintiff and Respondent, | G062668 |
| v. | (Super. Ct. No. 30-2022-1274803) |
| AMERISAVE MORTGAGE CORPORATION, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Peter J. Wilson, Judge. (Retired Judge of Orange County Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Barnes & Thornburg, Mark W. Wallin, and Caroline C. Dickey for Defendant and Appellant.

Employment Rights Law Firm, Payam I. Aframian; Payton Employment Law, Chantal McCoy Payton, and Johnny Darnell Griggs for Plaintiff and Respondent.

\*          \*          \*

Appellant challenges a trial court ruling denying its motion to compel arbitration of a class action wage and hour complaint on grounds of unconscionability. The trial court found appellant's arbitration agreement was adhesive and lacked mutuality because it limited arbitration to claims an employee is more likely to bring. We find the trial court's ruling correctly applies both California and federal law and thus affirm the judgment.

STATEMENT OF FACTS

Appellant AmeriSave Mortgage Corporation (AmeriSave) is an online mortgage lender based in Georgia. AmeriSave hired respondent Shahrokh Yeganeh in November 2021. As part of its onboarding process, AmeriSave says, it would provide new employees with copies of the company's employee manual, and would have them sign a receipt and acknowledgment of the manual. Yeganeh signed this document in November 2021.

The employee manual contained a policy requiring arbitration of "covered claims." The manual defines "covered claims" as "claims, disputes and/or controversies prior and/or subsequent to th[e] policy . . . arising from, relating to, or having any relationship or connection whatsoever with the Fair [L]abor Standards Act ('FLSA'), any state or local wage and hour statute, or any other claim or cause of action alleging you were paid improperly or paid insufficient wages, overtime, or any compensation." The receipt and acknowledgement of the manual states the employee agrees "that

2

as a condition of [his or her] employment or continued employment," covered claims must be arbitrated.[1]

Yeganeh said he signed the receipt and acknowledgment with the understanding that it was a requirement in order for him to work at AmeriSave. He claimed he was not given an opportunity to opt out of the arbitration policy, and he did not know he was agreeing to arbitrate.

PROCEDURAL HISTORY

On August 10, 2022, Yeganeh filed a class action complaint against AmeriSave for various claims under the Labor Code[2], including failure to pay overtime and minimum wages, failure to provide accurate and itemized wage statements, and failure to reimburse business expenses. Yeganeh also brought a claim under the Private Attorneys General Act (PAGA), Labor Code section 2698, et seq.

AmeriSave's counsel asked Yeganeh to arbitrate under the company's policy, but he refused. AmeriSave thereafter filed a motion to

---

[1] The document also states, "Except for those claims subject to the Company's Arbitration Policy, I acknowledge and understand that as a condition of my employment, I am waiving my right to have a trial by jury to resolve any lawsuit related to my application for, employment or cessation of employment with the Company." We are not sure why exception was made for claims subject to the arbitration policy, as arbitration would necessarily require an employee to forego trial by jury. The trial court was similarly confused by this language: "I do not know what that was intended to mean but it is [a] completely tautologist statement. Going to arbitration, of course, is the antithesis of right to jury . . . ."

[2] All statutory references are to the Labor Code.

compel arbitration on October 24, 2022.[3] Yeganeh opposed the motion, arguing the arbitration policy was procedurally and substantively unconscionable. The arbitration policy was procedurally unconscionable, he said, because it was an adhesive contract to which he had to acquiesce as a condition of employment. The policy was substantively unconscionable, according to him, because it lacked mutuality and required the arbitration to occur in Georgia.

AmeriSave submitted a declaration from its assistant vice president of human resources, Sandra Garcia. Garcia averred that all new employees could ask their human resources representative about company policies during the onboarding process, and the company had no record of Yeganeh raising any issues before or after signing the acknowledgment form.

On February 2, 2023, the day of the hearing on AmeriSave's motion, Yeganeh filed as an exhibit a copy of his employment agreement with the company. This document—separate from the employee manual and acknowledgment of same—reiterates an agreement that dispute resolution would take place by arbitration. However, the provision containing this language appears to be fairly inconspicuous.[4] It also contains a choice of law provision designating Georgia law. The trial court continued the motion hearing to allow AmeriSave to review and respond to the newly-filed exhibit.

---

[3] AmeriSave also argued that Yeganeh's individual PAGA claim should be arbitrated under *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 662 (*Viking River Cruises*).

[4] The provision is sub-headed "Dispute Resolution" and is in small type, stating as follows: "As provided in the Employee Manual, Employee agrees that all disputes related to or arising out of Employee's employment with AMC shall be settled by Arbitration." There is no place for the employee to initial that he has seen and agreed to this language.

4

AmeriSave filed a brief arguing the employment agreement's choice of Georgia law did not render the arbitration policy in the employee manual unconscionable or unenforceable. Rather, AmeriSave claimed, the two agreements were separate and independent. In response, Yeganeh argued the employee manual and employment agreement were all part of the same contract, and application of Georgia law would strip employees of protections under the Code. Yeganeh further argued the choice of law provision was not severable because Georgia law is the underlying foundation for each provision in the employment agreement.[5]

After hearing oral argument, the trial court denied AmeriSave's motion to compel. It first found AmeriSave had shown the employee manual with receipt and acknowledgment were signed by Yeganeh, and the lawsuit was covered by the agreement. It then moved onto the question of unconscionability. While the court found there was little procedural unconscionability, it found the contract was adhesive. The court found the arbitration policy was substantively unconscionable because its definition of "covered claims" included those claims "most likely to be brought by employees." Moreover, said the court, the arbitration policy's choice of Fulton County, Georgia, as the forum for any arbitration was substantively unconscionable and voidable under section 925, subdivision (b).

---

[5] For the first time, Yeganeh also raised the possibility in this brief that he had never received the employee manual. The trial court refused to consider this new assertion in its ruling because it was raised by way of a reply brief. We likewise will not consider it and assume for purposes of this appeal that Yeganeh did in fact receive the manual.

# DISCUSSION

## I.

### STANDARD OF REVIEW

"Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493 (*Ramirez*).) Here, the facts are undisputed and the appeal presents a question of law. Thus, our review is de novo.

## II.

### MOTION TO COMPEL ARBITRATION

AmeriSave sought to compel arbitration pursuant to both the California Arbitration Act (CAA) (Code Civ. Proc., §§ 1281 et seq.) and the Federal Arbitration Act (FAA) (9 U.S.C. § 2 et seq.). Under both schemes, a litigant may be compelled to arbitration where the moving party can show the existence of an arbitration agreement covering the dispute. (See Code Civ. Proc., § 1281.2; see also *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 (*Armendariz*).) But also under both schemes, the litigant unwilling to arbitrate can demonstrate the arbitration agreement should be revoked for grounds which would apply to any contract. (See *Armendariz*, *supra*, 24 Cal.4th at p. 98.) One such ground is unconscionability. Once AmeriSave established the existence of an applicable arbitration agreement, the burden shifted to Yeganeh to show unconscionability. (See *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 653-654.)

6

## III.

### ARBITRATION AGREEMENT

Before we can determine the agreement's validity, our threshold task is to identify what the agreement is. In support of its motion to compel, AmeriSave submitted the employee manual, containing its arbitration policy, and the receipt and acknowledgment of the employee manual. It claims these are the documents comprising the arbitration agreement. Yeganeh submitted his employment agreement as further documentation comprising the parties' arbitration agreement.

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.) The record indicates Yeganeh signed both the receipt and acknowledgment of the employee manual and the employment agreement on November 9, 2021. Garcia avers Yeganeh would have been provided the employee manual along with all other "onboarding documents" upon his hire. Since both documents were signed the same day, it is reasonable to infer the employment agreement was part of the group of onboarding documents Yeganeh would have received. Thus, we conclude, all three agreements, all of which contain arbitration language, should be interpreted together in order to discern the parties' arbitration agreement.

The trial court determined the employment agreement was not part of the overall arbitration agreement. It pointed to language in the employee manual's arbitration provision stating: "THIS POLICY SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN YOU AND AMERISAVE FOR THE RESOLUTION OF COVERED CLAIMS." But immediately preceding this language is the following: "The mutual obligations set forth in this agreement shall constitute a contract between

7

you and AmeriSave but shall not change . . . any term of any other contract or agreement between AmeriSave and you . . . ." We read this language to mean the terms of the employment agreement do not change.

The employment agreement states: "*As provided in the Employee Manual*, Employee agrees that all disputes related to or arising out of Employee's employment with AMC shall be settled by Arbitration." (Italics added.) Moreover, the employment agreement itself contains an integration clause, stating: "This Agreement, *including the Employee Manual*, embodies the entire agreement of the parties on the subject matter herein." (Italics added.) Since the employment agreement and the employee manual contain arbitration language, we must interpret the documents together to understand the scope and terms of the parties' agreement.

AmeriSave argues the employment agreement and employee manual are separate contracts and that the employee manual governs. But "parties may incorporate by reference into their contract the terms of some other document. [Citations.] . . . [E]ach case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." (*Scott's Valley Fruit Exchange v. Growers Refrigeration Co.* (1947) 81 Cal.App.2d 437, 447, disapproved on other grounds in *Hischemoeller v. National Ice & Cold Storage Co.* (1956) 46 Cal.2d 318.) "The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'" (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54.)

8

Here, the employment agreement directly refers to the employee manual containing the arbitration policy. Both documents were AmeriSave's, and we can safely assume AmeriSave drafted them or had them drafted. And both documents were available to both parties. We conclude the employment agreement incorporates the employee manual.

There can be no question that the present dispute is covered by the parties' arbitration agreement, consisting of the employment agreement, employee manual, and acknowledgment of receipt of the manual.[6] The agreement requires "covered claims" to be arbitrated, including wage and hour claims under statute.

IV.

FEDERAL ARBITRATION ACT

AmeriSave first argues that the parties' agreement is governed by the FAA, and the FAA preempts the application of any conflicting California law with respect to the enforceability of the agreement. We agree that the FAA governs because the agreement involves interstate commerce. (9 U.S.C. §§1, 2.) Yeganeh is a California resident and his employer is a Georgia corporation running an online mortgage business. Additionally, the arbitration policy and receipt and acknowledgment of the employee manual both provide that claims would be submitted to arbitration under the FAA.

However, the FAA does not preempt an unconscionability defense. The FAA, like the CAA, permits courts to refuse to enforce arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) Section 2 of the FAA "permits

___

[6] We assume this is undisputed because Yeganeh never argued otherwise, here or in the trial court.

state law to bar the enforcement of an arbitration agreement only if 'that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2.' (*Perry v. Thomas* [(1987)] 482 U.S. [483,] 492, fn. 9.)" (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1566.) So "the FAA 'preempts any state rule discriminating on its face against arbitration—for example, a law "prohibit[ing] outright the arbitration of a particular type of claim."'" (*Viking River Cruises*, *supra*, 596 U.S. at p. 650.)

AmeriSave argues that California case law regarding the unconscionability of arbitration agreements violates these principles. It points in particular to *Armendariz*, in which the California Supreme Court invalidated an employer's arbitration agreement because it lacked a "'modicum of bilaterality,'" in that the agreement only required the employees to arbitrate their wrongful termination claims. (*Armendariz*, *supra*, 24 Cal.4th at pp. 119-120.) The court held "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Id.* at p. 120.) AmeriSave's contention is that *Armendariz*'s modicum of bilaterality requirement violates the supremacy of the FAA because it relies "'on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable.'" (*AT&T Mobility, LLC v. Concepcion* (2011) 563 U.S. 333, 341 (*Concepcion*).) We disagree.

First, the United States Supreme Court has never disapproved *Armendariz*'s holding on unconscionability as it relates to FAA preemption.[7] Second, the modicum of bilaterality requirement is a protection not against the potential disadvantages of arbitration, but rather, the often stark difference in bargaining power between an employer and employee. (See *Armendariz, supra,* 24 Cal.4th at p. 118 ["Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself"].) The United States Supreme Court has emphasized that arbitration agreements are to be enforced only if they are based on an actual agreement through which consent was freely given. (See *Viking River Cruises, supra,* 596 U.S. at p. 651 [stating that first principle of FAA jurisprudence is that arbitration is strictly a matter of consent].) Such consent is called into question with adhesive contracts.

We thus turn to the question of unconscionability.

V.

UNCONSCIONABILITY

Yeganeh's contention was that the arbitration was a one-sided contract of adhesion, and the trial court ultimately agreed. In order to

_____

[7] *Concepcion* did overrule *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*), in which the state high court found under some circumstances, class action waivers in adhesive consumer contracts are unenforceable as a matter of law, whether the waiver is of class litigation or classwide arbitration. (*Id.* at p. 153.) But the opinion also cited *Armendariz* without expressly criticizing it. (*Concepcion, supra,* 563 U.S. at p. 340.)

11

invalidate an agreement or part thereof, unconscionability must be both procedural and substantive, but a sliding scale is used to assess it. (See *Armendariz, supra*, 24 Cal.4th at p. 114.) "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Ibid*.)

A.    *Procedural Unconscionability*

The focus of a procedural unconscionability analysis is the lead-up to the consummation of the contract, "'the manner in which [it] was negotiated and the circumstances of the parties.'" (See *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 273.) If the lead-up to the contract indicates the arbitration agreement "was the result of oppression or surprise due to unequal bargaining power between the employer and employee," the contract is considered adhesive and not freely negotiated by the employee. (*Id.* at pp. 282-283.) However, a party need not introduce evidence about the negotiation of the contract in order to create an inference of procedural unconscionability. The terms of the contract itself may indicate it was not "the product of 'give and take.'" (*Id.* at p. 284.)

Procedural unconscionability is often more of a concern where assent to arbitration of disputes is made a condition of employment, as explained in *Armendariz*: "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra*, 24 Cal.4th at p. 115.)

12

"'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.' (*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.* (2015) 232 Cal.App.4th 1332, 1348, fn. omitted.)" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126-127 (*Kho*).) The party asserting an unconscionability defense has the burden to prove it. (*Id.* at p. 126.)

In this case, we have no information about Yeganeh's education and experience, and there is no evidence he was assisted by an attorney in reviewing the documents. But it does not appear Yeganeh was under any particular time pressure to sign the documents. He stated he had to sign the documents to work at AmeriSave and he was not given a chance to negotiate or opt out of the arbitration agreement. He also says no one directed his attention to the arbitration policy and he did not understand he was agreeing to arbitration. Yeganeh's failure to appreciate the contents of the agreement does not suggest oppression or surprise, as "[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

The documents comprising the agreement were provided to Yeganeh electronically, and he signed via DocuSign, which indicates he might not have been in the same room as the person asking him to sign them. Sandra Garcia stated new employees could "speak with their Human Resources representative" if they had questions about company policies. The

employee manual also advised employees to speak with their manager or human resources "[i]f anything [wa]s unclear." There was no record of Yeganeh raising any such concerns.

But the agreement does appear to be adhesive. AmeriSave says Yeganeh signed the agreement as part of the onboarding process, so it was signed after he was hired, as he was beginning his job. The receipt and acknowledgment of the employee manual stated agreeing to arbitration was a condition of employment at the company. If Yeganeh did not sign them, he might not have kept his job. The prospect of losing his job may have been untenable for him as an employee. As such, we agree the agreement was adhesive. "Where there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796.) However, in the employment context, "the potential for overreaching . . . warrants close scrutiny of the contract's terms." (*Ramirez, supra*, 16 Cal.5th at p. 494.) [8]

_____

[8] Nonetheless, surprise may result when "supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." (See *A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486.) We thus register our concern that AmeriSave's practice of spreading arbitration terms among three different documents might result in employee confusion about the terms of the agreement. For example, the dispute resolution provision in the employment agreement states that "all disputes related to or arising out of Employee's employment with AMC shall be settled by Arbitration." This makes arbitrable a broader array of claims than just the "covered claims" designated in the manual as being arbitrable. Since Yeganeh does not dispute that his claims are covered by the agreement, and he did not claim to be confused by the multiple documents, we merely note this issue without addressing it.

*B.* *Substantive Unconscionability*

"Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation], focusing on whether the contract will create unfair or one-sided results [citation]. Substantively unconscionable contractual clauses 'reallocate risks in an objectively unreasonable or unexpected manner.'" (*Ramirez*, *supra*, 16 Cal.5th at p. 493.)

In the recent *Ramirez* case, the employee plaintiff made exactly the same argument as the one Yeganeh makes here. His employer's arbitration agreement also designated certain "covered claims" for arbitration, listing "a wide range of statutory and policy-based claims that would typically be initiated by an employee," such as unlawful termination, whistleblower, and workplace safety claims. (*Ramirez, supra,* 16 Cal.5th at p. 498.) The employee contended the agreement was one-sided "because it compelled arbitration of claims more likely to be brought by an employee and excluded claims more likely to be brought by" the employer, such as intellectual property and unfair competition claims. (*Id.* at pp. 495-496.) The California Supreme Court agreed, reiterating *Armendariz*'s requirement that there be a "'modicum of bilaterality'" when an agreement singles out claims for arbitration. (*Id.* at p. 495.) If no such bilaterality exists, the employer

15

must be able to show a reasonable justification for the one-sided agreement. Without one, the agreement is substantively unconscionable. (*Ibid.*)[9]

Just as in *Ramirez*, here, the arbitration policy[10] designates claims more likely to be brought by employees. It not only identifies claims under the FLSA, but also wage and hour claims and "any other claim or cause of action alleging [the employee was] paid improperly or paid insufficient wages, overtime, or any compensation." The quoted section is key. AmeriSave would, presumably, not sue Yeganeh for being paid improperly or insufficiently because AmeriSave is the one paying wages. The provision thus clearly requires only the employee to arbitrate.

AmeriSave counters that it would be required to arbitrate any claim it might have against Yeganeh under section 2865, which gives an

[9] AmeriSave argues that *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167 and other such cases misinterpret *Armendariz*'s mutuality requirement by analyzing whether an agreement requires arbitration of claims more likely to be brought by employees, as opposed to requiring arbitration of all claims by either employee or employer arising out of the same transaction or occurrence. The *Ramirez* decision came down after this appeal was fully briefed, and to our reading, it soundly rejects AmeriSave's contention. The state high court in fact seems to embrace the mutuality analysis by the trial court in this case, stating that the "remote possibility" that plaintiff Ramirez could bring claims normally brought by employers "does not change the conclusion that the Agreement, as a whole, tends to exempt claims likely to be made by Charter while directing Ramirez's likely claims into arbitration." (*Ramirez, supra,* 16 Cal.5th at p. 498.)

[10] As we state in a previous footnote, the scope of claims covered by the dispute resolution provision in the employment agreement and the arbitration policy in the employee manual differs. But because the employment agreement states that the parties' arbitration provision is "'[a]s provided in the Employee Manual,'" we conclude the manual's scope of claims is operative.

employer a cause of action against an employee for damages caused by his or her negligence.[11] Even assuming this is true, it does not change the reality that wage and hour-related claims are usually brought by employees rather than employers. And the language in the agreement indicates AmeriSave drafted its arbitration policy with the employee's potential claims in mind. The agreement is not made conscionable because AmeriSave can now conceive of a possible claim it might have to arbitrate.

Another problem with the arbitration policy is its choice of Fulton County, Georgia as the forum for arbitration. As the trial court correctly pointed out, this provision contravenes section 925, which prohibits an employer from requiring an employee who is primarily resident in California to agree to a provision requiring the employee to adjudicate claims out of state if they arise in California. (*Id.* at subd. (a).) While AmeriSave has agreed to hold the arbitration in Orange County, we note that unconscionability is determined as of the time the contract is made. (See Civ. Code, § 1670.5, subd. (a).)

And, as the employment agreement constitutes part of the arbitration agreement itself, it is also substantively unconscionable because it is governed by Georgia law. Section 925 also prohibits an employer from depriving an employee of "the substantive protection of California law with respect to a controversy arising in California." (*Id.* at subd. (a)(2).) We conclude the degree of substantive unconscionability here is high, and

---

[11] Specifically, section 2865 states as follows: "An employee who is guilty of a culpable degree of negligence is liable to his employer for the damage thereby caused to the employer. The employer is liable to the employee if the service is not gratuitous, for the value of the services only as are properly rendered."

17

AmeriSave has offered no reasonable business justification for the one-sided nature of the agreement.[12]

## VI.

### SEVERABILITY

While AmeriSave did not make an issue of it on appeal, it did argue in its briefing below that any unconscionable provisions in its agreement should be severed and the rest enforced. The trial court found the non-mutual provisions of the agreement could not be severed, because it would require a rewriting of "'covered claims.'" The trial court was correct.

Where a court finds a contract or any clause thereof was unconscionable at the time the contract was made, the court may refuse to enforce it, or may excise the unconscionable provision where appropriate. (See Civ. Code, § 1670.5, subd. (a).) While the preference of the law is to "sever the offending term and enforce the balance of the agreement," an agreement "permeated by unconscionability" should not be enforced. (See *Ramirez, supra*, 16 Cal.5th at p. 486.) So, in deciding whether to sever a provision or invalidate an agreement, "a court should ask whether 'the central purpose of the contract is tainted with illegality.'" (*Id.* at p. 546, quoting *Armendariz, supra*, 24 Cal.4th at p. 124.) Civil Code section 1670.5 does not permit a court to augment or add to a contract. (*Armendariz* at p. 125.)

---

[12] In making our conclusion, we are mindful that the California Supreme Court is currently reviewing similar issues in *Fuentes v. Empire Nissan* (2023) 90 Cal.App.5th 919, review granted August, 9, 2023, S280256 and *Basith v. Lithia Motors, Inc.* (2023) 90 Cal.App.5th 951, review granted August, 9, 2023, S280258.

The agreement between the parties here centers on which claims must be arbitrated and which are excluded from arbitration. Because the claims themselves indicate the one-sided nature of the agreement, it is impossible to sever the most unconscionable provision from the agreement without completely eviscerating it. The entire agreement must be invalidated.

DISPOSITION

The judgment of the trial court is affirmed. Respondent to recover his costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

GOETHALS, J.

GOODING, J.

19